

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NOS.  2-07-356-CR
2-07-357-CR

TRENTON SPARKS                                                APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Trenton Sparks appeals his convictions on two counts of robbery.  In three points, he argues that the trial court erred by admitting into evidence his videotaped confession to police, by prematurely sending the jury an *Allen* charge, and by failing to advise the jury that they could request that the court reporter read specific, disputed parts of the testimony to them.  We affirm.

----

[1] *See* TEX. R. APP. P. 47.4.

**Background**

The two robberies involved in these appeals occurred on May 6, 2006, at the Lewisville Marriott hotel and June 23, 2006, at the RaceTrac convenience store in The Colony. Concerning the first robbery, the record shows that two men wearing dark clothes and bandanas over their faces entered the Marriott a little after midnight, brandished what appeared to be a gun at a hotel guest, and demanded money from the desk clerk. The clerk gave them about $417 in cash, which had been divided and clipped together by denomination. The robbers fled, and hotel personnel called 911. Police observed four men driving a van without tail lamps about one-quarter mile from the hotel and initiated a traffic stop. Appellant was one of the rear-seat passengers. The officer who initiated the stop observed what appeared to be a semiautomatic handgun, but turned out to be a BB gun, on the floorboards between Appellant's feet. A subsequent search of the van discovered material consistent with the head coverings worn by the robbers and $379 in cash, divided and clipped together by denomination.

Appellant gave videotaped and written statements to police later that morning. Those statements form the basis of Appellant's first point, and we will discuss them in more detail later in this opinion.

2

In the second robbery, a man rushed into the RaceTrac store at around 4:00 a.m., brandished what appeared to be a gun, and demanded that the clerk give him all of the cash in the registers. The robber wore a gray sweatshirt, thick wool gloves, and black shorts and had a silk head wrap over his face. The clerk gave him the cash, and he fled. The clerk called 911, and ten to twenty minutes later, a police officer observed Appellant, who matched the clerk's description of the robber, driving a half mile from the store. The officer stopped Appellant but later released him when the store clerk could not positively identify him.

Later that day, a search of the area around the store discovered a gray sweatshirt balled up next to a fence, and wrapped in the shirt were gloves and a BB pistol. Police also recovered a head wrap or "do-rag." Police submitted DNA samples obtained from the shirt, do-rag, and gloves for testing. Appellant could not be excluded as the contributor of the DNA from the gloves, and the major DNA profile from the shirt and do-rag samples matched Appellant's DNA profile.

The State charged Appellant with both robberies. The cases were tried together, and a jury found him guilty of both offenses. When the jury deadlocked in punishment deliberations, the trial court declared a mistrial on punishment. Appellant later waived his right to have a jury assess punishment,

3

and under an agreement between Appellant and the State, the trial court sentenced him to two years' confinement in each case. Appellant appealed the judgments in both cases.

## Admission of Appellant's Videotape Confession

In his first point, Appellant argues that the trial court erred by denying his motion to suppress the videotape of his statement to police concerning the first robbery because he did not clearly waive his rights.

### 1. Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if

4

the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

## 2. Relevant facts

On the morning of the Marriott robbery, Lewisville Police Sergeant Darryl Humphrey met with Appellant in an interview room at the police station. The entire meeting was videotaped, and we have reviewed the video. Sergeant Humphrey read Appellant his *Miranda*[2] warnings, and Appellant indicated that he understood his rights by nodding. Sergeant Humphrey then informed Appellant that in order for the interview to continue, Appellant had to waive his rights. He then asked Appellant if he waived his rights. In response, Appellant asked what they were going to talk about. Sergeant Humphrey answered, "Last night." Appellant said that he had already told another officer that he had nothing to do with it. Officer Humphrey asked Appellant, "Okay, so can we talk about it? So, in other words, I have to–you have to waive those rights before we're supposed to talk about it." Appellant replied, "All right." Appellant eventually admitted that he was involved in the robbery but said that he had been unsure that the robbery would actually take place, that he had not thought his accomplice would go through with the robbery, and that anyone could tell that the gun was fake. After the interview, Appellant made a written

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 441–42, 86 S. Ct. 1602, 1611 (1966).

6

statement.  The written statement contains a recitation of Appellant's rights and an explicit waiver of those rights, which was signed by Appellant.

At the hearing on Appellant's motion to suppress the tape, the trial court reviewed the video.  Appellant stipulated that he had prior experience with the criminal justice system or juvenile justice system.  The trial court denied his motion to suppress, stating on the record, "I believe it is a waiver."  At trial, the trial court admitted into evidence both the interview video and Appellant's written statement, and the jury viewed the video.

### 3.  Analysis

The relevant portions of article 38.22 of the Texas Code of Criminal Procedure provide that no oral statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding, unless prior to the statement but during the recording, the accused is given the required statutory warnings, and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.  TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (Vernon 2005).

A waiver of rights may be inferred from the actions and words of the person interrogated.  *Hargrove v. State*, 162 S.W.3d 313, 318 (Tex. App.—Fort Worth 2005, pet. ref'd); *State v. Oliver*, 29 S.W.3d 190, 191–92 (Tex. App.—San Antonio 2000, pet. ref'd).  The Court of Criminal Appeals has

7

stated, "We do not . . . interpret the oral confession statute to require an express verbal statement from an accused that he waives his rights prior to giving the statement. In reaching the voluntariness of a confession, this Court looks at the totality of the circumstances." *Barefield v. State*, 784 S.W.2d 38, 40–41 (Tex. Crim. App. 1989), *cert. denied*, 497 U.S. 1011 (1990), *overruled on other grounds by Zimmerman v. State*, 860 S.W.2d 89, 94 (Tex. Crim. App. 1993). Furthermore, in *Oliver*, the San Antonio Court of Appeals held that the "Court of Criminal Appeals has approved the inference of a waiver from the totality of the circumstances in the situation where an oral confession contains a recitation of the article 38.22 warnings and the defendant indicates he understands his rights and proceeds without hesitation to participate in the interview." *Oliver*, 29 S.W.3d at 193.

In this case, the video shows that Sergeant Humphrey read Appellant his rights, and Appellant, who admits that he had prior experience in the criminal justice system, indicated that he understood his rights. When Sergeant Humphrey asked, "[C]an we talk about it? . . . [Y]ou have to waive those rights before we're supposed to talk about it," Appellant answered, "All right." Appellant argues that he could have intended by his answer merely to indicate that he understood what the sergeant was saying and not to waive his rights.

8

This possibility is undermined by the fact that Appellant next proceeded without hesitation to participate in the interview. *See id.*

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling and deferring to the trial court's determinations of historical fact, we hold that the trial court did not err by denying Appellant's motion to suppress, and we overrule his first point.

### *Allen* Charge[3]

In his second point, Appellant argues that the trial court erred by sending the jury a premature *Allen* charge and denying Appellant's motion for mistrial when the jury reported that it could not reach a verdict concerning the second of the two robberies. After the jury had deliberated for less than three hours, it sent the trial court a note stating that it had reached a verdict in the first robbery but not the second. The trial court allowed the jury to break for lunch, after which they deliberated for less than two more hours before sending a note saying that they were deadlocked on the second robbery. Appellant moved for

---

[3] *See Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 157 (1896). An *Allen* charge is given to instruct a deadlocked jury to continue deliberating. *See id.* The court of criminal appeals has approved the use of such a charge under these circumstances. *Howard v. State*, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996), *cert. denied,* 535 U.S. 1065 (2002).

9

a mistrial based on the length of time the jury had been deliberating. The trial court denied his motion and read the jury an *Allen* charge instead.

The State argues that Appellant waived his complaint about the *Allen* charge by expressly stating that he had no objection to it. We agree. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). Appellant stated that he had no objection to the *Allen* charge. We therefore hold that he failed to preserve error for our review.

Even if Appellant had preserved error, we would overrule his point. An *Allen* charge will constitute reversible error only if, on its face, it is so improper as to render jury misconduct likely or jury misconduct is demonstrated to have occurred in fact. *Calicult v. State*, 503 S.W.2d 574, 576 n.2 (Tex. Crim. App. 1974). To prevail on a complaint that an *Allen* charge is coercive, an accused

must show that jury coercion or misconduct likely occurred or occurred in fact. *Love v. State*, 909 S.W.2d 930, 936 (Tex. App.—El Paso 1995, pet. ref'd). An *Allen* charge is unduly coercive and therefore improper only if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case. *Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973). The primary inquiry is the coercive effect of such a charge on juror deliberation in its context and under all circumstances. *Howard*, 941 S.W.2d at 123. Here, Appellant does not argue, and the record does not show, that the trial court improperly pressured the jury to reach a particular verdict or improperly conveyed its opinion of the case. We therefore overrule this part of his second point.

We turn now to Appellant's motion for mistrial. The decision of whether to require a jury to continue deliberations is within the trial court's discretion. *See* TEX. CODE CRIM. PROC. ANN. art. 36.31 (Vernon 2006); *Guidry v. State*, 9 S.W.3d 133, 155 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 837 (2000). The trial court is not obligated to declare a mistrial at the first sign of jury impasse. *Howard*, 941 S.W.2d at 121. Rather, the court may do so if it determines, in its discretion, that the jury has been kept together for such a time as to render it altogether improbable that it can agree. *Id.* We review a

trial court's decision to require a jury to continue deliberations for an abuse of discretion. *Jackson v. State*, 17 S.W.3d 664, 676 (Tex. Crim. App. 2000).

In this case, the jury heard approximately twelve hours of testimony. The trial involved two separate crimes. The jury reported that it was deadlocked on one of the charges after four and a half hours of deliberation. Considering the amount of evidence, the complexity of the case, and the duration of deliberations, we cannot say that the trial court abused its discretion by requiring the jury to deliberate further. We overrule the remainder of Appellant's second point.

**Improper Jury Instruction**

In his third point, Appellant argues that the trial court erred by confounding the jury with an improper instruction when the jury sent out a note asking at what time of day police had stopped Appellant in connection with the second robbery. During deliberations, the jury sent out a note asking, "If the police reports were entered into evidence, may we see copies of the reports from The Colony officers? If not, what was the time Trenton Sparks was initially stopped on June 23, 2006?" The trial court replied to the first question, "You have all of the evidence that was admitted," and to the second, "I cannot answer that question. You must rely on your recollections of the evidence." Appellant requested an instruction telling the jury that the court

12

reporter could read a portion of the testimony to them if they identified a specific part of the testimony about which they were in dispute. The trial court denied his request, stating, "I think it's premature to go there yet."

Article 36.28 provides that "if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.28 (Vernon 2006). This statute seeks to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any factual disputes it may have. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005). When asked by the jury to reread testimony, the trial court must first determine if the request is proper under article 36.28. *Iness v. State*, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980). A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under article 36.28. *Howell*, 175 S.W.3d at 792; *Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 199486), *cert. denied*, 515 U.S. 1162 (1995). We review a trial court's determination of whether there is a factual dispute between jury members for an abuse of discretion. *Robinson*, 888 S.W.2d at 480.

13

Here, the jury's note did not specifically indicate that the jurors disagreed as to the statement of any witness. Their request for the time of Appellant's apprehension was a simple request that did not, by itself, reflect disagreement, implicit or express. We therefore hold that the trial court did not err by determining that it was not a proper request under article 36.28. We further hold that the trial court did not abuse its discretion by denying Appellant's request to inform the jury that they could request specific testimony. We overrule his third point.

## Conclusion

Having overruled all three of Appellant's points, we affirm the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 28, 2008

14