COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
 2-07-356-CR

                                                2-07-357-CR

 

 

TRENTON SPARKS                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Trenton Sparks appeals his
convictions on two counts of robbery.  In
three points, he argues that the trial court erred by admitting into evidence
his videotaped confession to police, by prematurely sending the jury an Allen
charge, and by failing to advise the jury that they could request that the
court reporter read specific, disputed parts of the testimony to them.  We affirm.








                                            Background

The two robberies involved in
these appeals occurred on May 6, 2006, at the Lewisville Marriott hotel and
June 23, 2006, at the RaceTrac convenience store in The Colony.  Concerning the first robbery, the record shows
that two men wearing dark clothes and bandanas over their faces entered the
Marriott a little after midnight, brandished what appeared to be a gun at a
hotel guest, and demanded money from the desk clerk.  The clerk gave them about $417 in cash, which
had been divided and clipped together by denomination.  The robbers fled, and hotel personnel called
911.  Police observed four men driving a
van without tail lamps about one-quarter mile from the hotel and initiated a traffic
stop.  Appellant was one of the rear-seat
passengers.  The officer who initiated
the stop observed what appeared to be a semiautomatic handgun, but turned out
to be a BB gun, on the floorboards between Appellant=s feet.  A subsequent search of
the van discovered material consistent with the head coverings worn by the
robbers and $379 in cash, divided and clipped together by denomination. 

Appellant gave videotaped and
written statements to police later that morning.  Those statements form the basis of Appellant=s first point, and we will discuss them in more detail later in this
opinion.








In the second robbery, a man
rushed into the RaceTrac store at around 4:00 a.m., brandished what appeared to
be a gun, and demanded that the clerk give him all of the cash in the
registers.  The robber wore a gray
sweatshirt, thick wool gloves, and black shorts and had a silk head wrap over
his face.  The clerk gave him the cash,
and he fled.  The clerk called 911, and
ten to twenty minutes later, a police officer observed Appellant, who matched
the clerk=s
description of the robber, driving a half mile from the store.  The officer stopped Appellant but later
released him when the store clerk could not positively identify him. 

Later that day, a search of
the area around the store discovered a gray sweatshirt balled up next to a
fence, and wrapped in the shirt were gloves and a BB pistol.  Police also recovered a head wrap or Ado-rag.@  Police submitted DNA samples obtained from
the shirt, do-rag, and gloves for testing. 
Appellant could not be excluded as the contributor of the DNA from the
gloves, and the major DNA profile from the shirt and do-rag samples matched
Appellant=s DNA
profile. 








The State charged Appellant
with both robberies. The cases were tried together, and a jury found him guilty
of both offenses.  When the jury
deadlocked in punishment deliberations, the trial court declared a mistrial on
punishment.  Appellant later waived his
right to have a jury assess punishment, and under an agreement between
Appellant and the State, the trial court sentenced him to two years= confinement in each case. 
Appellant appealed the judgments in both cases.

                     Admission of Appellant=s Videotape Confession

In his first point, Appellant
argues that the trial court erred by denying his motion to suppress the
videotape of his statement to police concerning the first robbery because he
did not clearly waive his rights.

1.     Standard of review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000), modified on other grounds by State v. Cullen,
195 S.W.3d 696 (Tex. Crim. App. 2006). 
Therefore, we give almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002).  But
when application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s rulings on those questions de novo. 
Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d
604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s ruling, supports those fact findings.  Kelly, 204 S.W.3d at 818B19.  We then review the trial
court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.

 

 








2.     Relevant facts








On the morning of the
Marriott robbery, Lewisville Police Sergeant Darryl Humphrey met with Appellant
in an interview room at the police station. 
The entire meeting was videotaped, and we have reviewed the video.  Sergeant Humphrey read Appellant his Miranda[2] warnings, and Appellant indicated that he understood his rights by
nodding.  Sergeant Humphrey then informed
Appellant that in order for the interview to continue, Appellant had to waive
his rights.  He then asked Appellant if
he waived his rights.  In response,
Appellant asked what they were going to talk about.  Sergeant Humphrey answered, ALast night.@  Appellant said that he had already told
another officer that he had nothing to do with it.  Officer Humphrey asked Appellant, AOkay, so can we talk about it? 
So, in other words, I have toByou have to waive those rights before we=re supposed to talk about it.@  Appellant replied, AAll right.@  Appellant eventually admitted that he was
involved in the robbery but said that he had been unsure that the robbery would
actually take place, that he had not thought his accomplice would go through
with the robbery, and that anyone could tell that the gun was fake.  After the interview, Appellant made a written
statement.  The written statement
contains a recitation of Appellant=s rights and an explicit waiver of those rights, which was signed by
Appellant. 

At the hearing on Appellant=s motion to suppress the tape, the trial court reviewed the
video.  Appellant stipulated that he had
prior experience with the criminal justice system or juvenile justice
system.  The trial court denied his
motion to suppress, stating on the record, AI believe it is a waiver.@  At trial, the trial court
admitted into evidence both the interview video and Appellant=s written statement, and the jury viewed the video. 

3.     Analysis

The relevant portions of
article 38.22 of the Texas Code of Criminal Procedure provide that no oral
statement of an accused made as a result of a custodial interrogation shall be
admissible against the accused in a criminal proceeding, unless prior to the
statement but during the recording, the accused is given the required statutory
warnings, and the accused knowingly, intelligently, and voluntarily waives any
rights set out in the warning.  Tex. Code Crim. Proc. Ann. art. 38.22, ' 2(a) (Vernon 2005).








A waiver of rights may be
inferred from the actions and words of the person interrogated.  Hargrove v. State, 162 S.W.3d 313, 318
(Tex. App.CFort Worth
2005, pet. ref=d); State
v. Oliver, 29 S.W.3d 190, 191B92 (Tex. App.CSan Antonio
2000, pet. ref=d).  The Court of Criminal Appeals has stated, AWe do not . . . interpret the oral confession statute to
require an express verbal statement from an accused that he waives his rights
prior to giving the statement.  In
reaching the voluntariness of a confession, this Court looks at the totality of
the circumstances.@  Barefield v. State, 784 S.W.2d 38, 40B41 (Tex. Crim. App. 1989), cert. denied, 497 U.S. 1011 (1990), overruled
on other grounds by Zimmerman v. State, 860 S.W.2d 89, 94
(Tex. Crim. App. 1993).  Furthermore, in Oliver,
the San Antonio Court of Appeals held that the ACourt of Criminal Appeals has approved the inference of a waiver from
the totality of the circumstances in the situation where an oral confession
contains a recitation of the article 38.22 warnings and the defendant indicates
he understands his rights and proceeds without hesitation to participate in the
interview.@  Oliver, 29 S.W.3d at 193.








In this case, the video shows
that Sergeant Humphrey read Appellant his rights, and Appellant, who admits
that he had prior experience in the criminal justice system, indicated that he
understood his rights.  When Sergeant
Humphrey asked, A[C]an we
talk about it? . . . [Y]ou have to waive those rights before we=re supposed to talk about it,@ Appellant answered, AAll right.@  Appellant argues that he could have intended
by his answer merely to indicate that he understood what the sergeant was
saying and not to waive his rights.  This
possibility is undermined by the fact that Appellant next proceeded without
hesitation to participate in the interview. 
See id.

Viewing the totality of the
circumstances in the light most favorable to the trial court=s ruling and deferring to the trial court=s determinations of historical fact, we hold that the trial court did
not err by denying Appellant=s motion to suppress, and we overrule his first point.

                                           Allen Charge[3]








In his second point,
Appellant argues that the trial court erred by sending the jury a premature Allen
charge and denying Appellant=s motion for mistrial when the jury reported that it could not reach a
verdict concerning the second of the two robberies.  After the jury had deliberated for less than
three hours,  it sent the trial court a
note stating that it had reached a verdict in the first robbery but not the
second.  The trial court allowed the jury
to break for lunch, after which they deliberated for less than two more hours
before sending a note saying that they were deadlocked on the second
robbery.  Appellant moved for a mistrial
based on the length of time the jury had been deliberating.  The trial court denied his motion and read
the jury an Allen charge instead. 

The State argues that
Appellant waived his complaint about the Allen charge by expressly
stating that he had no objection to it. 
We agree.  To preserve a complaint
for our review, a party must have presented to the trial court a timely
request, objection, or motion that states the specific grounds for the desired
ruling if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  Appellant stated that he had no objection to
the Allen charge.  We therefore
hold that he failed to preserve error for our review.








Even if Appellant had
preserved error, we would overrule his point. 
An Allen charge will constitute reversible error only if, on its
face, it is so improper as to render jury misconduct likely or jury misconduct
is demonstrated to have occurred in fact. 
Calicult v. State, 503 S.W.2d 574, 576 n.2 (Tex. Crim. App.
1974).  To prevail on a complaint that an
Allen charge is coercive, an accused must show that jury coercion or
misconduct likely occurred or occurred in fact. 
Love v. State, 909 S.W.2d 930, 936 (Tex. App.CEl Paso 1995, pet.
ref=d).  An Allen charge is unduly coercive and
therefore improper only if it pressures jurors into reaching a particular
verdict or improperly conveys the court=s opinion of the
case.  Arrevalo v. State, 489
S.W.2d 569, 571 (Tex. Crim. App. 1973).  The primary inquiry is the coercive effect of
such a charge on juror deliberation in its context and under all circumstances.
 Howard, 941 S.W.2d at 123.  Here, Appellant does not argue, and the
record does not show, that the trial court improperly pressured the jury to
reach a particular verdict or improperly conveyed its opinion of the case.  We therefore overrule this part of his second
point.








We turn now to Appellant=s motion for mistrial.  The
decision of whether to require a jury to continue deliberations is within the
trial court=s
discretion.  See Tex. Code Crim. Proc. Ann. art. 36.31
(Vernon 2006); Guidry v. State, 9 S.W.3d 133, 155 (Tex. Crim. App.
1999), cert. denied, 531 U.S. 837 (2000).  The trial court is not obligated to declare a
mistrial at the first sign of jury impasse. 
Howard, 941 S.W.2d at 121. 
Rather, the court may do so if it determines, in its discretion, that
the jury has been kept together for such a time as to render it altogether
improbable that it can agree.  Id.  We review a trial court=s decision to require a jury to continue deliberations for an abuse of
discretion.  Jackson v. State, 17
S.W.3d 664, 676 (Tex. Crim. App. 2000).

In this case, the jury heard
approximately twelve hours of testimony. 
The trial involved two separate crimes. 
The jury reported that it was deadlocked on one of the charges after four
and a half hours of deliberation. 
Considering the amount of evidence, the complexity of the case, and the
duration of deliberations, we cannot say that the trial court abused its
discretion by requiring the jury to deliberate further.  We overrule the remainder of Appellant=s second point.

                                   Improper Jury Instruction








In his third point, Appellant
argues that the trial court erred by confounding the jury with an improper
instruction when the jury sent out a note asking at what time of day police had
stopped Appellant in connection with the second robbery.  During deliberations, the jury sent out a
note asking, AIf the
police reports were entered into evidence, may we see copies of the reports
from The Colony officers?  If not, what
was the time Trenton Sparks was initially stopped on June 23, 2006?@  The trial court replied to the
first question, AYou have all
of the evidence that was admitted,@ and to the second, AI cannot answer that question. 
You must rely on your recollections of the evidence.@  Appellant requested an
instruction telling the jury that the court reporter could read a portion of the
testimony to them if they identified a specific part of the testimony about
which they were in dispute.  The trial
court denied his request, stating, AI think it=s premature
to go there yet.@  

Article 36.28 provides that Aif the jury disagree as to the statement of any witness they may, upon
applying to the court, have read to them from the court reporter=s notes that part of such witness testimony or the particular point in
dispute, and no other . . . .@  Tex. Code Crim. Proc. Ann. art. 36.28 (Vernon 2006).  This statute seeks to balance our concern
that the trial court not comment on the evidence with the need to provide the
jury with the means to resolve any factual disputes it may have.  Howell v. State, 175 S.W.3d 786, 790
(Tex. Crim. App. 2005).  When asked by
the jury to reread testimony, the trial court must first determine if the
request is proper under article 36.28.  Iness
v. State, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980).  A simple request for testimony does not, by
itself, reflect disagreement, implicit or express, and is not a proper request
under article 36.28.  Howell, 175
S.W.3d at 792; Robison v. State, 888 S.W.2d 473, 480 (Tex. Crim. App.
199486), cert. denied, 515 U.S. 1162 (1995).  We review a trial court=s determination of whether there is a factual dispute between jury
members for an abuse of discretion.  Robinson,
888 S.W.2d at 480.








Here, the jury=s note did not specifically indicate that the jurors disagreed as to
the statement of any witness.  Their
request for the time of Appellant=s apprehension was a simple request that did not, by itself, reflect
disagreement, implicit or express.  We
therefore hold that the trial court did not err by determining that it was not
a proper request under article 36.28.  We
further hold that the trial court did not abuse its discretion by denying
Appellant=s request to
inform the jury that they could request specific testimony.  We overrule his third point.

                                             Conclusion

Having overruled all three of
Appellant=s points, we
affirm the trial court=s
judgments.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL:
GARDNER, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 28, 2008











[1]See Tex. R. App. P. 47.4.





[2]See
Miranda v. Arizona, 384 U.S. 436, 441B42,
86 S. Ct. 1602, 1611 (1966). 

 





[3]See
Allen v. United States, 164 U.S. 492, 501, 17 S. Ct. 154, 157
(1896).  An Allen charge is given
to instruct a deadlocked jury to continue deliberating.  See id.   The court of criminal appeals has approved
the use of such a charge under these circumstances.  Howard v. State, 941 S.W.2d 102, 123
(Tex. Crim. App. 1996),
cert. denied, 535 U.S. 1065 (2002).