In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-08-164-CR


 _____________________



RAYMOND YOUNG, Appellant



V.



THE STATE OF TEXAS, Appellee







On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 92153






MEMORANDUM OPINION



 A jury convicted Raymond Young of the murder of Sheila Davis, and assessed a
punishment of confinement in prison for life. In five issues, Young asserts he was denied
a fair trial and should be granted a new trial. Our review of the record reveals no ground for
reversal of the trial court's judgment on any of the issues raised. We therefore affirm the
judgment. 


Background


 Sheila Davis was engaged to Demond Guidry. On the day she was killed, she and
Guidry went to the domestic crime violence office to press charges against Raymond Young
for threatening to kill Davis. Raymond Young and Sheila Davis had a relationship in the
past. Young is the father of Davis's child. Guidry testified that Young called Davis's cell
phone while Guidry and Davis were talking to an officer at the family violence unit.

 That night, Guidry and Sheila Davis were at home when Guidry heard a knock at the
door. He asked who it was. A muffled voice, almost like a woman's voice, responded. 
Guidry testified he opened the door, saw a shotgun, and "fell against the door." The gunman
fired the shotgun and forced his way into the house. Davis ran to the back of the house. 
Guidry thought he would be shot, but the man went after Davis. A police officer found
Davis dead under a covered patio next door. Guidry identified the man who broke into the
house as Raymond Young.

 Issues One and Five


 In issue one, Young argues the trial court erred in denying his motion for continuance,
because the State did not produce its expert's ballistics report until five days before trial. In
issue five, he contends the trial court erred in denying his motion for an independent
examination of the shotgun and for additional funds for his expert. We consider issues one
and five together.

 In discovery motions filed in early 2007, and in letters to the trial court and the
prosecutor, Young requested the results of scientific tests, including ballistics reports. The
State's ballistics report, dated June 29, 2004, was not submitted to defense counsel until
March 19, 2008, only five days before trial and over three years after the report was
completed.

 The trial began on March 24, 2008. When defense counsel requested a continuance
on the trial's first day, the trial judge stated: 

 We can't have it both ways. We've got a motion for speedy trial, motion for
speedy trial, I can't get to trial, I can't get to trial. We get to trial, and now we
want a continuance. This was brought to my attention on the day of trial, and
nothing has been done to bring this to my attention prior to today to try to get
the Court's involvement as to any discovery dispute. With that, your motion
for continuance is denied.


After the trial court denied Young's continuance motion, Young also requested an
independent examination of the shotgun used in the commission of the offense and asked for
additional funds for his expert. 

 Young argues the trial court abused its discretion in denying his continuance motion,
because he did not have adequate time to examine the ballistics evidence and the report. He
also asserts the trial court's refusal to grant his continuance motion, along with his motion
for independent examination of the shotgun and additional funds for his expert, violated his
due process rights.

 Whether to grant a motion for continuance is within the sound discretion of the trial
court. Renteria v. State, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); see Tex. Code Crim.
Proc. Ann. arts. 29.03, 29.06(6) (Vernon 2006). To establish the trial court's abuse of that
discretion, "an appellant must show that the denial of his motion resulted in actual
prejudice." Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) (citing Janecka v.
State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)). 

 The State contends Young did not establish harm from the trial court's failure to grant
a continuance, because the defense expert, appointed by the court almost a year before trial, 
had sufficient time to "double-check" the State's expert's work, but failed to do so. 
According to the State, the defense expert's replication of the testing could have been
completed in two or three hours. The State also asserts there is no indication that the
testimony would have shown any different result.

 There is a statutory right to discovery in criminal cases. Article 39.14(a) of the Texas
Code of Criminal Procedure provides as follows:

 (a) Upon motion of the defendant showing good cause therefor and upon
notice to the other parties, the court in which an action is pending shall order
the State before or during trial of a criminal action therein pending or on trial
to produce and permit the inspection and copying or photographing by or on
behalf of the defendant of any designated documents, papers, written statement
of the defendant, (except written statements of witnesses and except the work
product of counsel in the case and their investigators and their notes or report),
books, accounts, letters, photographs, objects or tangible things not privileged,
which constitute or contain evidence material to any matter involved in the
action and which are in the possession, custody or control of the State or any
of its agencies. The order shall specify the time, place and manner of making
the inspection and taking the copies and photographs of any of the
aforementioned documents or tangible evidence; provided, however, that the
rights herein granted shall not extend to written communications between the
State or any of its agents or representatives or employees. Nothing in this Act
shall authorize the removal of such evidence from the possession of the State,
and any inspection shall be in the presence of a representative of the State.


Tex. Code Crim. Proc. Ann. art. 39.14(a) (Vernon Supp. 2008). Article 39.14(a) provides
for discovery of evidence that is "material to any matter involved in the action and which [is]
in the possession, custody or control of the State or any of its agencies." Id. 

 The discovery statute is not self-executing. A defendant must file a motion, give
notice to other parties, and show good cause for the discovery. Id. Only then is the trial
court required to order the State to produce and permit discovery; the order is required to be
specific as to time, place, and manner. Id. 

 Young relies on State v. LaRue, 152 S.W.3d 95 (Tex. Crim. App. 2004). There the
appellant filed a motion for discovery, and the trial court granted the motion without setting
a date for discovery to be accomplished. Id. at 96. Although the State had received the lab
test results, the State did not turn the report over to defense counsel until the date of trial,
some ten months after the discovery order. Id. Under the circumstances of that case, the
Court of Criminal Appeals concluded that the State's failure to timely produce DNA was not
willful. Id. at 99-100. 

 In this case, there is no order in the record requiring the State to produce evidence. 
See Johnson v. State, 172 S.W.3d 6, 18 (Tex. App.--Austin 2005, pet. ref'd) ("[A] discovery
request alone, without an order or follow-up in some manner, is a hollow gesture."); Kirksey
v. State, 132 S.W.3d 49, 54-55 (Tex. App.-- Beaumont 2004, no pet.) ("As there was no time,
place or manner specified by the trial court for the State to respond to discovery, the
prosecutor's production of the photographs immediately prior to the taking of testimony was
proper."). Although the record includes the April 20, 2007, order appointing an expert for
appellant and providing funds for the expert, we find no order in the record requiring the
State to produce anything. 

 Young's motion for an independent examination of the shotgun and for additional
expert funds was presented to the trial court on the first day of trial. The indictment charged
Young with murder using a deadly weapon -- a firearm. Young's expert was appointed
almost a year prior to trial. Young had time to obtain an order compelling discovery and
permitting an examination of the firearm prior to trial. 

 Brady v. Maryland and its progeny also provide a right to certain discovery. See
Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Michaelwicz v.
State, 186 S.W.3d 601, 612 (Tex. App.--Austin 2006, pet. ref'd) (citing 42 George E. Dix
& Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 22.21 (2d
ed. 2001)). "To protect a criminal defendant's right to a fair trial, the Due Process Clause
of the Fourteenth Amendment to the United States Constitution requires the prosecution to
disclose exculpatory and impeachment evidence to the defense that is material to either guilt
or punishment." Ex parte Reed, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008) (footnote
omitted). The prosecution's failure to comply with this duty is harmful and requires reversal
and a new trial. Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). However,
the ballistics report in this case was not exculpatory. The report concluded that the shell
casings found at the scene of the crime came from the gun submitted to the expert for testing.

 Young relies on Anderson v. State, 268 S.W.3d 130 (Tex. App.--Corpus Christi-Edinburg 2008, pet. granted). There the State did not provide defense counsel with the
official DNA report until the morning of trial. Id. at 132. The Thirteenth Court of Appeals
recognized a due process exception to the requirement of a written motion for continuance. 
Id. at 133. The Court explained that inherent within the defendant's right to a meaningful
opportunity to present a complete defense is the right to confront the evidence against him. 
Id. at 134 (citing Crane v. Kentucky, 476 U.S. 683, 690-91, 106 S.Ct. 2142, 90 L.Ed.2d 636
(1986); U. S. Const. amend. VI; Pointer v. Texas, 380 U.S. 400, 406-07, 85 S.Ct. 1065, 13
L.Ed.2d 923 (1965)). Considering the untimely production of the DNA evidence, the court
concluded Anderson was not afforded that right. Id. at 135. Further, the court concluded
Anderson established specific prejudice as a result of the denial of his continuance motion,
because he was unable to discuss the DNA report with the chemist, unable to effectively
cross-examine the chemist, unable to conduct additional testing, and unable to obtain another
expert to opine on the chemist's conclusions. Id. at 134. 

 In this case, the judge had already appointed an expert witness for Young and
provided funds for the expert. The defendant could have sought an order that the expert be
allowed to conduct forensic testing on the ballistics material and the firearm referenced in
the indictment. Having been appointed earlier, the expert was available to discuss the results
of the State's report when it was produced. 

 We conclude there was no violation of Young's due process rights and no abuse of
discretion by the trial court. The ballistics report was not exculpatory; there was no order
requiring production; the trial court had appointed an expert for defendant; the defendant
could have requested an independent examination of ballistics evidence and the firearm 
before the day of trial; and defense counsel could have discussed the ballistics report with
the defense expert once the State produced it. We overrule issues one and five.

Issue Two


 In issue two, Young argues that the trial court erred in limiting defense counsel's
cross-examination and his presentation of testimony, and that the cumulative effect of this
limitation denied him a fair trial. See Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App.
2002) (Criminal defendant is entitled to an opportunity to explain himself and present
evidence on his behalf.). Jurors are entitled to have the benefit of the defense before them
so that they can make an informed decision regarding the weight to be given the witness's
testimony, though they may ultimately reject the theory. Maxwell v. State, 48 S.W.3d 196,
199 (Tex. Crim. App. 2001) (citing Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39
L.Ed.2d 347 (1974)). In considering a defendant's ability to present his case, there are at
least two instances in which rulings excluding a defendant's evidence may violate the
Constitution: a state evidentiary rule that arbitrarily, and in a way "disproportionate to the
purposes [the rule] is designed to serve," prohibits the defendant from offering otherwise
relevant, reliable evidence vital to his defense; and a trial court's ruling excluding otherwise
relevant, reliable evidence that "forms such a vital portion of the case that exclusion
effectively precludes the defendant from presenting a defense." Potier v. State, 68 S.W.3d
657, 659-66 (Tex. Crim. App. 2002). 

 A defendant has a right to cross-examine witnesses. Lopez v. State, 18 S.W.3d 220,
222 (Tex. Crim. App. 2000); see also Davis, 415 U.S. at 316 (The Sixth Amendment right
to confront witnesses includes the right to cross-examine witnesses to attack their general
credibility or to show their possible bias, self-interest, or motives in testifying.). "Cross-examination is the principal means by which the believability of a witness and the truth of
his testimony are tested." Davis, 415 U.S. at 316; see Pointer v. Texas, 380 U.S. at 404
(value of cross-examination -- exposing falsehood and bringing out the truth in the trial of
a criminal case). The cross-examiner may delve into the witness's story to test his
perceptions and memory and may impeach or discredit the witness. Davis, 415 U.S. at 316. 
Under the Sixth Amendment, the right to cross-examine a witness and the right to present
evidence generally do not conflict with the "corresponding rights under state evidentiary
rules." Hammer v. State, No. PD-0786-08, 2009 WL 928561, at *4 (Tex. Crim. App. Apr.
8, 2009) (not yet released for publication) (footnote omitted). 

 The trial court may limit the scope of cross-examination to avoid harassment,
prejudice, confusion of the issues, endangerment of the witness, and the injection of
cumulative or collateral evidence. Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct.
1431, 89 L.Ed.2d 674 (1986). An appellate court reviews the trial court's decision under an
abuse of discretion standard. See Matchett v. State, 941 S.W.2d 922, 940 (Tex. Crim App.
1996). When the trial court acts "'without reference to any guiding rules or principles,'" an
abuse of discretion occurs. State v. Herndon, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007)
(quoting Howell v. State, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005)). Abuse of discretion
is also the standard of review in decisions regarding the presentation of the case; the trial
judge has discretion in determining whether the evidence is to be admitted or excluded. See
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). 

 Improper limitation of cross-examination is a violation of the confrontation clauses
of the federal and state constitutions. Lopez, 18 S.W.3d at 222; Shelby v. State, 819 S.W.2d
544, 546 (Tex. Crim. App. 1991) (citing Van Arsdall, 475 U.S. at 684); U.S. Const. Amend.
VI; Tex. Const. art. 1, § 10. In determining whether the error was harmful, the reviewing
court applies a three-pronged test. See Shelby, 819 S.W.2d at 547, 550-51; Tex. R. App.
44.2(a). First, we assume that the damaging potential of the cross-examination was fully
realized. Shelby, 819 S.W.2d at 547, 550. Second, we review the error in connection with
the following factors: the importance of the witness's testimony in the prosecution's case;
whether the testimony was cumulative; the presence or absence of evidence supporting or
conflicting with the witness's testimony on material points; the extent of cross-examination
permitted; and the overall strength of the prosecution's case. Id. at 547, 550-51. Finally, in
light of the first two prongs, we determine whether the error was harmless beyond a
reasonable doubt. Id. at 547, 551. Here, Young presents sixteen instances in which he
argues the trial court erred in either restricting cross-examination or in refusing to allow him
to present certain evidence in his defense. (1)

 Gabrielle Daniels, a witness for the State and a neighbor of Davis, noticed someone
in a Mazda vehicle stopped in the neighborhood that night. On cross-examination, Young's
trial counsel attempted to demonstrate that counsel could have fit the description of the
person in the car, but the trial court sustained the State's objection to that testimony. We find
no error in excluding the testimony, and even if erroneous, the exclusion was harmless. Trial
counsel had already cross-examined Daniels on the inconsistency in her descriptions of the
person in the car.

 Dr. Tommy Brown, a forensic pathologist, performed the autopsy on Sheila Davis. 
Defense counsel questioned Dr. Brown on the theory of "transference" "when two human
beings come into contact" and "leave a trace of the other[.]" Trial counsel asked Dr. Brown
if "we were to believe that there was a struggle that took place between the suspect and Ms.
Davis . . . , scientifically we would expect transference?" The State objected to the question
as "assum[ing] facts not in evidence"; the trial court sustained the objection. During
continued questioning by trial counsel, Brown testified to an estimated distance of four to six
feet from the perpetrator's shotgun to Davis. Defense counsel then asked Brown about blood
splatter at that range. Dr. Brown testified he would not necessarily expect blood splatter, but
if it occurred, it would be in the direction of the shotgun blast. The record reveals that in
spite of the trial court's sustaining the objection, Young's attorney continued his questioning
that developed information regarding the topic of blood splatter, and also reached the concept
of transference. Under the circumstances, though the trial court's ruling may have been in
error, we conclude no harm resulted from the sustaining of the prosecutor's objection.

 Trial counsel also questioned Dr. Brown about the valium in Davis's body at the time
of the autopsy. Defense counsel asked, "And if Ms. Davis didn't have a valid prescription
for this Valium . . . . [,] [t]hen she obviously got that from a drug dealer, didn't she?" The
State objected as "assuming facts not in evidence." No evidence in the record suggests that
Ms. Davis obtained valium from a drug dealer. The trial court did not err in sustaining the
State's objection.

 Referencing photographs showing blood on various areas of the floor inside the house,
defense counsel asked Sue Kelly, I.D. technician for the Beaumont Police Department, if "the
perpetrator would have followed Ms. Davis as this path indicated, quite logically, he would
have had to step in blood?" The prosecutor objected on grounds of "[a]ssuming facts not in
evidence." The trial judge sustained the objection and asked trial counsel to "[r]ephrase it." 
Instead, counsel chose to ask a question about evidence found in the vehicle that would
allegedly link Young to the scene.

 We find no harm in sustaining the objection and asking counsel to rephrase the
question. Through cross-examination of Sara Moon, ID technician for the Beaumont Police
Department, defense counsel established that Moon was not able to lift any footprint or shoe
print from the floor of the residence. No print evidence -- either footprint or fingerprint --
linked Young to the crime. Furthermore, Young did not avail himself of the opportunity to
rephrase the question. 

 Defense counsel cross-examined Demond Guidry, Davis's fiancee. On direct
examination, the State had elicited testimony from Guidry concerning Young's repeated cell
phone calls to Davis in the days before her death. Defense counsel asked if Davis had made
several calls to Young during June. The trial court sustained the prosecutor's objection to
the question. However, Guidry, upon being shown phone records, acknowledged that Davis
made some calls to Young in June. Error, if any, was harmless. 

 Defense counsel also questioned Guidry concerning his feelings about the calls that
Davis, his fiancee, had made to Young. Guidry indicated that at the time Davis made the
calls he (Guidry) had no knowledge of them. Defense counsel then asked how Guidry felt
at trial about the calls. The trial court sustained the State's relevancy objection. The trial
court refused to allow trial counsel to ask Guidry whether he wanted to sue Young. The jury
likely understood Guidry would feel ill-will toward the person he believed to be the
perpetrator, whether he admitted that or not. We find any error in sustaining the State's
objections does not require reversal of the judgment. 

 Demond Guidry described the struggle with the perpetrator who came through the
door that night with a gun. During cross-examination, defense counsel established that the
perpetrator ripped part of Guidry's shirt off. Photographs of Guidry that night after the
murder showed what appeared to be minor injuries to his knee and finger. Trial counsel
asked Guidy: "Now, in that injury [injury to Guidry's finger], clearly you scratched the
perpetrator here in this case?" Guidry stated he was "not sure. I guess it's a possibility that
I could have." Defense counsel then asked, "And it's logical to see how the perpetrator
would have been injured as well?" The prosecutor objected that the question speculated on
facts not in evidence; the trial court sustained the objection.

 Through this line of questioning, trial counsel was attempting to challenge the identity
element of the murder offense by showing that the perpetrator would have been injured by
the struggle with Guidry. The limitation of cross-examination did not harm the defendant,
however, because other evidence was presented that Young, when arrested, had no fresh
injuries. With the description of the struggle and Guidry's injuries, the jurors were presented
with evidence from which they could infer that the perpetrator may have been injured. 

 Young contends he was prevented from eliciting testimony from Merline Marie
Woolridge (Young's sister) concerning her belief that Guidry had animosity toward Young
over the relationship between Davis and Young. Upon further questioning after the trial
court sustained the State's objection, however, Woolridge indicated that Guidry appeared to
be visibly upset about the relationship between Davis and Young. 

 The trial court also sustained the State's objection to another question trial counsel
posed to Woolridge regarding any concerns she had about the relationship between Guidry
and Davis. The question appeared to call for speculation -- the grounds on which the State
objected. Under the circumstances, we find no error in the trial court's ruling.

 Young argues his ability to demonstrate the "missing links in some of the State's
evidence" was hampered by the trial court's restriction of cross-examination. Defense
counsel called Tammy LeBleu, a forensic analyst for the Jefferson County Crime Lab at the
time of the murder, as a witness. She explained she "collected evidence at crime scenes" and
processed evidence looking for body fluids, blood, semen, and trace evidence. The trial court
sustained the State's objection when Young's attorney attempted to have LeBleu express her
opinion as to whether it would be important to test the vehicle. The Mazda had been loaned
to Young on the date of the murder by Tonye Nelson, Young's friend. After Davis's murder,
Young returned the Mazda to Nelson, who turned the Mazda over to the police for scientific
testing. In further testimony, the jury heard that various items of evidence including
fingerprints and DNA, were submitted to the laboratory. None of the evidence listed --
whether from the murder scene, the shotgun, or Young's pickup -- linked Young to the
crime, though testimony and circumstantial evidence did. The jury was capable of
determining the weight or importance to be given the State's decision to not scientifically 
test the car for DNA, fingerprints, and other evidence. We find the error in the trial court's
refusal to allow defense counsel to elicit LeBleu's testimony on the non-testing of the car
does not require reversal of the judgment. 

 Trial counsel recalled Tonye Nelson during the presentation of the defendant's case.

Nelson had testified that Young asked to borrow Nelson's Mazda so that Young could go to
Beaumont to take photographs "of what was going on at Sheila's house." Young argues the
trial court improperly restricted his questioning on the issue of whether the Beaumont Police
Department was involved in "processing" the Mazda. The record does not support Young's
argument of a restriction on his questioning of Nelson, however. Nelson testified that the
Beaumont Police Department was one of the agencies involved in the processing of the
vehicle.

 Young argues the trial court limited his cross-examination regarding testing of
evidence. Defense counsel asked Deputy Gary Clayton, crime scene investigator with the
Harris County Sheriff's Department, if law enforcement made the decision as to what tests
would be done on a piece of evidence. The prosecutor objected on the ground that the
question had already been asked and answered. The trial court also sustained the
prosecutor's objections to a question about why the gun was not submitted for additional
testing and a question asking for the name of someone with knowledge of that answer. The
trial court did not err in sustaining the prosecutor's objections, because Tammy LeBleu had
already testified that the Beaumont Police Department usually made the decisions regarding
the evidence that would be tested. The jury was capable of giving proper weight to issues
regarding further testing. 

 Young argues the trial court limited his cross-examination on a "critical portion" of
his defense -- that there was no evidence of " blowback, blood transference, or some other
trace evidence linking [him] to the [shotgun]." Trial counsel asked Deputy Clayton, "And
as we sit here today, there is absolutely no scientific evidence to link that gun to Mr. Young,
none?" The prosecutor objected that "[t]his has been asked and answered[,]" and the trial
court sustained the objection. 

 The record reveals the gun was tested for fingerprints, and Young's fingerprints were
not on the gun. In addition, DNA evidence on the trigger and trigger guard were submitted
for testing; there was no link to Young's DNA. There was no harm in sustaining the "asked-
and-answered" objection, because evidence elsewhere established there was no scientific
evidence linking the gun to Young. 

 Young contends he was prevented from cross-examining Bradley Bruns, the firearms
and ballistics expert, on the nature of gunshot residue. The State objected that this "area has
been covered. It's been asked, and it's been answered." Dr. Tommy Brown had already
explained blow back and blood splatter, an area encompassing the residue topic. Defense
counsel then asked if Bruns was familiar with blow back, and he provided a detailed
explanation as follows:

 A. [Bruns] In my firearms area of expertise, blow back would be if the muzzle
was close enough to the target -- let's say a person -- when it fired, there would
be a little bit of a vacuum in that -- in the barrel as the pellets or the bullets
passed out and if it's close enough, there could be some blood come from the
victim back into the end of the muzzle of the shotgun or pistol, whatever it
may be. 

 Q. [Defense Counsel] That's important that you say that. So at a close shot,
point-blank shot, you're saying what causes blow back would be - and this is
the science - the vacuum which would bring the victim's blood back onto the
barrel of the gun, right?

 A. Yes, sir, it could be the vacuum. It could be just the splattering or the
squirting out of the blood, but that's how it generally happens.

 Q. And that's at close ranges, right?

 A. Yes, sir. 

Given that this general subject matter was covered by Bruns and Dr. Brown, we find no
harm. 

 Young also argues the trial court erroneously sustained the State's objection when trial
counsel attempted to cross-examine Bruns to determine whether a particular area in the
trigger-guard was tested for DNA. Deputy Clayton had already testified regarding the DNA
testing on the trigger guard. He explained he swabbed only the trigger and trigger guard
areas for DNA, because he felt they were "more prevalent for DNA[.]" He believed the other
areas were "more prevalent for fingerprints." There was no harm in sustaining the
prosecutor's "asked-and-answered" objection. 

 Young contends he was prevented from cross-examining Bruns regarding the
methodology pertaining to the tracing of shotgun shell casings through the IBIS System
(Integrated Ballistics Identification System). Bruns described the IBIS system, which "takes
an image of that print [individual marks that firearms leave], puts it into a computer and then
the computer searches our particular geographical database . . . and it searches that whole
area to see if any evidence that was fired from that gun would match the one that I put in." 
Defense counsel then posed the example of Brazoria County (an area Bruns stated was
covered by the system), and attempted to elicit information about how the process worked. 
The trial court sustained the prosecutor's relevancy objection. Immediately thereafter
counsel was able to establish, through Bruns's responses, that the IBIS system is able to
determine if any connection exists between the shell found at the crime scene and other
crimes committed in other areas with that particular firearm. Bruns had already provided a
detailed explanation of the IBIS and its methodology. There was no harm in sustaining the
prosecutor's objection to the question about the application of IBIS in Brazoria County,
because the evidence came in otherwise without objection. 

 Young contends the State was allowed to prevent him from demonstrating through the
expert witness Bruns that "no scientific evidence linked the gun to [Young.]" However,
Tammy LeBleu, forensic analyst with Jefferson County Regional Crime Lab, testified that
none of the thirty-three items of scientific trace evidence submitted to the laboratory linked
Young to the murder, and Deputy Clayton testified no DNA evidence or fingerprints were
obtained from the shotgun. 

 Young further argued that he was not allowed to cross-examine Bruns about possible
DNA contamination and destruction of DNA and fingerprint evidence on the gun. However,
the record reflects that in response to defense counsel's questioning about contamination,
Bruns acknowledged that his handling of the gun could have left his DNA and fingerprints
on the evidence. We see no harm in sustaining the prosecutor's "asked-and-answered"
objection, since Bruns had already acknowledged possible evidence contamination.

 A key theme in Young's defense was the lack of scientific evidence linking him to the
crime. Presentation of evidence and cross-examination of witnesses on that theme were
important to his case, and the trial court accorded Young his right to do both. Direct
evidence through the testimony of Demond Guidry linked Young to the murder; Guidry
identified Young as the intruder who, armed with a shotgun, broke into the couple's home
the night of the murder. Circumstantial evidence linked Young to the crime as well: Nelson
loaned Young his car; Young put in the car a shotgun case that appeared to have a gun in it;
Young told Nelson he was going to use the car to go to Davis's residence to take pictures of
what was going on there; the shotgun used to commit the murder was found behind the
dumpster of the apartment complex of a woman whom Young visited after the murder;
Young told Nelson he paid someone to kill Davis; Young asked Nelson to provide an alibi
for him; and Gabrielle Daniels, Davis's neighbor, identified a photograph of Nelson's car as
being the one stopped on their street the night of the murder. Given the direct and
circumstantial evidence supporting the jury's verdict, we conclude beyond a reasonable doubt
that even if the trial court erred when the court precluded Young from presenting evidence
or cross-examining witnesses, any error, singularly or cumulatively, did not contribute to
Young's conviction. See Shelby, 819 S.W.2d at 547-51 (citing Van Arsdall, 475 U.S. at
684); see also Murphy v. State, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003) (When the
court finds little or no error in various points alleging constitutional violations denying due
process of law, "there is no harm or not enough harm to accumulate."). We overrule
Young's second issue.


Issue Three


 In issue three, Young argues the trial court "erred in allowing a State's witness to
speculate as to what [Young] told his trial counsel thereby invading the attorney-client
privilege and abrogating his Sixth Amendment right to counsel." Demond Guidry testified
that after he saw the intruder's shotgun, he "fell against the door" to close it. On cross-examination, trial counsel asked Guidry if the perpetrator had on gloves. Guidry answered
"[n]ot to my knowledge," but he could not say for sure. Trial counsel stated, "Not to your
knowedge, no gloves." Young's trial counsel sought to establish that, without gloves on, the
perpetrator would have sustained some injury when the door was closed on his hand, but
Young had no discernible injuries. On redirect examination, the prosecutor remarked that
Young's counsel seemed confident the perpetrator was not wearing gloves. The following
exchange occurred:

 Q. [Prosecutor]: And defense counsel was talking to you about the gloves and
you said you weren't sure if the man had gloves on or not: is that right?

 A. [Demond Guidry]: Yes, sir.

 Q. Defense counsel seemed awful confident though that the defendant was not
wearing gloves.

 [Defense Counsel]: Your Honor, I'm going to object to the sidebar.

 [The Court]: That's sustained. Rephrase it.

 Q. The question to you was that he was not wearing gloves somewhat with
confidence, that he was not wearing gloves. Do you have any idea why the
defense lawyer dis- 

 [Defense Counsel]: Your Honor, again, sidebar and there is also speculation
and irrelevant.

 [The Court]: It's overruled.

 Q. Any idea why the defense lawyer would be so confident why [the
perpetrator] didn't have gloves?

 A. Maybe because his client told him he didn't have none. 


Based on this exchange, Young asserts the following: his trial counsel's question about
gloves did not suggest anything about counsel's confidence that gloves were not worn; it was
speculative for the State's witness to guess as to why defense counsel would ask any question
about gloves; Young had an absolute Fifth Amendment privilege not to testify as to what he
told his attorney; and Guidry's testimony amounted to a violation of Young's Sixth
Amendment right to counsel. 

 The State argues appellant did not timely object to the testimony and waived any error.
Defense counsel first objected on the grounds of a "sidebar" remark; the trial court sustained
that objection and asked that the question be rephrased. The prosecutor rephrased the
question, and trial counsel then objected on the grounds of sidebar, speculation, and
relevance. There were no objections on grounds relating to the Fifth Amendment, Sixth
Amendment, or rules 503, 701, or 704 of Texas Rules of Evidence. Any complaints on those
grounds were waived. See Tex. R. App. 33.1(a); Tex. R. Evid. 503, 701, 704. 

 Young preserved his complaint that the testimony was based on speculation. We
review a trial court's discretion to admit evidence under an abuse-of-discretion standard. 
McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). We do not reverse that
decision absent a clear abuse of discretion. Id. When the decision lies outside the zone of
reasonable disagreement, the trial court abuses its discretion in admitting evidence. Id. The
prosecutor's question asking Demond Guidry why appellant counsel was so confident that
Young did not have on gloves called for speculation. The question was objectionable and
Guidry's answer was inadmissible. The trial court erred in overruling the objection.

 The jury could reasonably have inferred that a door forcefully closed on an ungloved
hand would have left some kind of injury, and there was no evidence Young sustained any
injury to his hand. We believe, however, the error in allowing Guidry to speculate on "why
the defense lawyer would be so confident why he [Young] didn't have [on] gloves" would
have had but slight effect. We conclude based on a review of the entire record the trial
court's error in admitting the objectionable portion of Guidry's answer did not have a
substantial and injurious effect or influence on the jury in reaching its verdict. We therefore
overrule issue three.

Issue Four


 In issue four, Young argues the trial court erred in restricting his argument urging the
jury to hold the State to its burden of proof beyond a reasonable doubt. 

Trial counsel argued as follows to the jury:

 [Defense Counsel]: In these instructions, the Judge said your verdict must be
unanimous after hearing the evidence in this particular case. [The prosecutor]
talked about justice, in the name of justice, if you don't believe they met their
burden, I ask you in fairness and in justice to say I will not vote for guilty for
Mr. Young. Hold out. Hold to your convictions - -


 [Prosecutor]: I'm going to object that that's an improper argument.


 [The Court]: That's sustained, and your time is up. Mr. [Prosecutor], you will
have 20 minutes. I'll give you a 2-minute warning and a 1-minute warning.


Young contends that by sustaining the State's objection, "the trial court instructed each
individual juror that it was authorized to convict appellant on proof which failed to remove
all reasonable doubt, or less than a unanimous verdict, which is less of a burden than that
which is constitutionally required." Young asserts his trial counsel's argument followed the
law, and the trial court committed reversible error in contravening the charge when it
sustained the State's objection. 

 Young and the State interpret trial counsel's jury argument differently. The State
interprets the argument as asking the jury to resist proper deliberation and consideration of
the evidence. In contrast, Young argues he was asking the jury to hold the State to its burden
of proof. The trial court apparently agreed with the State's interpretation, because the
objection was sustained. 

 Though the trial court erred in sustaining the objection, we do not find the error was
harmful. The jury charge properly instructed the jury as follows:

 Now if you believe from the evidence beyond a reasonable doubt that in
Jefferson County, Texas, on or about the 16th day of June, Two Thousand and
Four, and anterior to the presentment of this indictment, in the County of
Jefferson and State of Texas the defendant Raymond Young, did then and
there intentionally or knowingly, acting alone or as a party, as that term has
been defined, cause the death of an individual, namely: SH[EIL]A MARIE
DAVIS, hereafter styled the Complainant, by shooting Complainant with a
deadly weapon, to-wit: a firearm, then you should find the defendant GUILTY
of Murder as alleged in the indictment.


The charge further stated in "general instructions" as follows:


 All persons are presumed to be innocent and no person may be convicted of
an offense unless each element of the offense is proved beyond a reasonable
doubt. The fact that a person has been arrested, confined, or indicted for, or
otherwise charged with the offense gives rise to no inference of guilt at his
trial. The law does not require a defendant to prove his innocence or produce
any evidence at all. The presumption of innocence alone is sufficient to acquit
the defendant, unless the jurors are satisfied beyond a reasonable doubt of the
defendant[']s guilt, after careful and impartial consideration of all the evidence
in the case.

 The prosecution has the burden of proving the defendant guilty and it
must do so by proving each and every element of the offense charged beyond
a reasonable doubt and if it fails to do so, you must acquit the defendant.

 It is not required that the prosecution prove guilt beyond all possible
doubt; it is required that the prosecution's proof excludes all "reasonable
doubt" concerning the defendant's guilt.


Young relies in part on Young v. State, which held that "[s]ubmission to the jury . . . of an
instruction that an 'abiding belief' in defendant's guilt would require a guilty verdict, was
tantamount to authorization of conviction on less than proof beyond reasonable doubt[,]" 
and was reversibly erroneous. Young, 648 S.W.2d 2, 3 (Tex. Crim. App. 1983). In Young, 
the charge submitted to the jury was incorrect because it required a lesser burden of proof.
Id. 

 The trial court submitted to the jury a substantially correct jury charge. In its
instructions, the trial court's charge stated there was a presumption of innocence and the
burden of proof was beyond a reasonable doubt. The application paragraph also stated the
beyond-a-reasonable-doubt burden of proof. We find no harm in the trial court's sustaining
the State's objection to Young's jury argument. We overrule issue four. 

 The judgment is affirmed.

 AFFIRMED. 

 

 

 DAVID GAULTNEY

 Justice 



Submitted on May 14, 2009 

Opinion Delivered October 14, 2009

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.
1. Young also appears to argue the trial court treated his objections differently from
those of the prosecutor. Young references three places in the record where he asserts he
made identical objections -- overruled by the trial court -- to similar testimony. He does not
present argument or case-law explaining how the particular objections and rulings are
reversible error.