Rachelle L. **HOWELL**, Appellant,

v.

The **STATE** of Texas.

No. PD–887–04.

Court of Criminal Appeals of Texas.

Sept. 14, 2005.

 

Terrence W. Kirk, Austin, for Appellant.

Jeffrey L. Van Horn, First Asst. S.A., Matthew Paul, State's Attorney, Austin, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court joined by KELLER, P.J., and PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ.

During jury deliberations at Rachelle Howell's trial, the jurors requested certain testimony be read to them. The judge asked if the jury was in disagreement, and they replied that one or more of them did not clearly hear the testimony. The judge found that this constituted a dispute under the relevant statute. We conclude that the judge did not abuse his discretion in reaching this conclusion, and the Court of Appeals erred in holding otherwise.

### Facts

The State charged Howell with DWI. She pleaded not guilty, and the case went to trial. During deliberations, at about 2:45 p.m., the jury sent out a note saying, "We would like a copy of the police officer's testimony—specifically, whether he believes the defendant was intoxicated at the time of arrest."

The judge sent to the jury the following excerpt from the reporter's record:

Q: What was your conclusion?

A: Based on what I saw on the field sobriety and what I noticed in her eyes, I believed that she was intoxicated to the point where she didn't have normal use of her normal mental or physical faculties at that point.

At 3:40, the jury sent out another note saying, "We are currently deadlocked 3–3 and are making no progress toward resolution. Can the court offer guidance?" The judge responded, "Keep deliberating."

At about 3:45, the jury sent out the following note:

1. We want the record of the police officer's testimony when being questioned by the Prosecutor (not the Defense). Initial and redirect.

2. We want the chart pad summary that the Prosecutor used in closing argument.

At this point, defense counsel pointed out that "there has to be a specific point of disagreement." The judge responded that he "[had] to answer, 'Be more specific.' The following discussion ensued:

THE COURT: That is normally what I respond is be more specific, and then go from there.

[DEFENSE COUNSEL]: Maybe, be more specific about the point of your dispute.

[PROSECUTOR]: No, I don't think we can inquire as to their deliberation.

THE COURT: You are right. She is correct. The thing I get from this is they want the whole record.

[PROSECUTOR]: Right.

THE COURT: I am not going to give them the whole record, so I have got to tie it down by saying, "Be more specific," and two, "Not in evidence." Very simple.

The court responded to the jury's note with "1. Be more specific. 2. Not in evidence."

At 4:00, the judge received another note from the jury saying, "We want the officer's testimony, when being questioned by the Prosecutor, concerning the eye movement test (1st test performed) on the defendant." The following discussion occurred:

[DEFENSE COUNSEL]: The first one—they have to explicitly, have to have a disagreement as to the testimony of the witness.

THE COURT: All right. I'll go ahead and write, do you have a disagreement as to that testimony. Do you like that response?

[PROSECUTOR]: I don't want to ask what is it.

[DEFENSE COUNSEL]: Okay, yeah. I see, I see.

THE COURT: I will ask them if they are in disagreement. If you start looking for—

[PROSECUTOR]: Judge, is that what they are asking in the first question?

THE COURT: Let me make the response, okay? "Are you in disagreement as to the testimony?"

[PROSECUTOR]: How about "as to this testimony"?

THE COURT: "Are you in disagreement as to this testimony?" Okay.

The judge sent that question to the jury. The jury responded, "We have an individual (or maybe more) who didn't clearly hear all of the testimony and wants to review it." The parties discussed this response:

[DEFENSE COUNSEL]: No, actually, I don't believe this—I don't think this is something we can answer under 36.28.

THE COURT: Let me see it again.

[PROSECUTOR]: Well, in disagreement. It's defined as a disagreement. I don't think they agree on the testimony; some people think it says one thing, and—

THE COURT: I'm sorry, I beg your pardon. I beg your pardon. They have a disagreement. The question was "Are you in disagreement as to this testimony?" "We have an individual (or maybe

more) who didn't clearly hear all of the testimony and wants to review it."

[DEFENSE COUNSEL]: They have a disagreement? They have an individual or maybe more who didn't clearly hear all of the testimony and wants to review it. I don't think that matches 36.28.

After a recess, the following discussion ensued:

THE COURT: Well, all right. Let's see what you came up with in response to the original question, the officer's testimony when being questioned by the prosecutor concerning the eye movement test, first test performed, on the defendant. That is the question.

[DEFENSE COUNSEL]: I think the rule contemplates a specific disagreement about a specific point. I think the—

THE COURT: Let me read it. "We have an individual (or maybe more) who didn't clearly hear all the testimony and wants"—

I've got to go back, first of all, to the question, okay, because it is in response to my question, on disagreement as to testimony. First of all, I guess we've really got to go back. "We want the record of the police officer's testimony when being questioned by the prosecutor (not the defense)." Okay. And in response I said, "Be more specific," and they come back with this: "We want the officer's testimony when being questioned"—I'm sorry. Isn't it at the bottom of that page?

Yeah, here is the one I just got done reading. And my response, okay—oh, I'm sorry—"Are you in disagreement as to the testimony?"

And this is where they came back with that response. But they were specific in the first question, We want the record of the police officer's testimony when being questioned by the prosecutor. And I said, "Be more specific." So they come down and say, we want the part about the question by the prosecutor, concerning the eye movement, the first, the first test. All right.

The court reporter read back to counsel and the judge a portion of the record. Then:

THE COURT: Now the Court proposes to send back these portions of the record in response to the question.

[DEFENSE COUNSEL]: I am going to object to providing this information. I don't believe this request for testimony reflects disagreement; and, therefore, I believe it is not a proper request under 36.28. On that basis, I object.

THE COURT: Objection overruled.

The court then sent back the testimony.[1]

The jury ultimately returned and found Howell guilty. The judge sentenced her to 180 days in jail, probated for two years, and a $2000 fine.

## On Appeal

Howell appealed, arguing in her second point of error that the trial judge erred in allowing testimony to be read back to the jury in the absence of a disagreement. The Court of Appeals agreed,[2] relying on *Moore v. State*[3] and distinguishing *Robison v. State*.[4] The appellate court found the error harmful and reversed Howell's conviction.[5]

1. *See* Appendix.

2. *Howell v. State*, 149 S.W.3d 686, 691–92 (Tex.App.-Austin 2004).

3. 874 S.W.2d 671 (Tex.Crim.App.1994).

4. 888 S.W.2d 473 (Tex.Crim.App.1994).

5. *Howell*, 149 S.W.3d at 692–93.

We granted the State's petition for discretionary review to decide whether the trial judge abused his discretion by inferring a dispute when, in response to the judge's inquiry about whether a disagreement existed, the jury responded that some members of the jury did not hear the testimony.

## Analysis

Article 36.28 provides that "if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other...."[6] This statute seeks to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any factual disputes it may have.[7]

When the jury asks that certain testimony be re-read, the judge must first determine if the request is proper under Article 36.28.[8] A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under Art. 36.28.[9] Instead, the request must reflect that the jurors disagree about a specified part of testimony.[10] The trial judge's conclusion as to whether there is a factual dispute between the jurors is reviewed for an abuse of discretion.[11] A trial judge abuses his discretion when his decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree.[12]

As the Court of Appeals recognized, our leading cases in this area are *Moore* and *Robison*. In *Moore*, the jury sent out a note during deliberations stating that it would like "the testimony of Moore, Ing [sic] and Schmidt describing what happened from the point where Ms. Moore was taken through the doors from the public area."[13] The defendant requested that the judge tell the jurors that they must certify there was a dispute among them as to that testimony. The judge denied that request and told the jury that the court reporter had to retrieve her notes so the testimony would not be available until 1:00 p.m.[14] At 1:45 p.m. the jury sent out a second note: "The jury requests to hear the earlier requested testimony of officer Ing [sic] and then retire for further deliberation. If the other testimony is needed we will request it."[15] The judge told the jury that he was still waiting for the court reporter to return. At 3:15 p.m. the jury sent out a third note: "We cannot progress any further until Officer Ing's [sic] testimony is read for us. Is the court reporter here so she can read that portion of the testimony?"[16] The court reporter had returned by this time, and the defendant objected to reading any testimony "because the jury has not certified that there is a dispute among themselves."[17] The judge overruled the objection, and the

---

6. Tex.Code Crim. Proc. art. 38.23.

7. *Robison*, 888 S.W.2d at 480.

8. *Iness v. State*, 606 S.W.2d 306, 314 (Tex. Crim.App.1980).

9. *Moore*, 874 S.W.2d at 673.

10. *Id.*

11. *Robison*, 888 S.W.2d at 480.

12. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim.App.1992).

13. *Moore*, 874 S.W.2d at 672.

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

court reporter read portions of the witness's testimony to the jury.[18]

We agreed with the Court of Appeals that "the last note from the jury, considered by itself or in conjunction with the prior notes, did not indicate the jury was in disagreement or specify a particular matter that was the focus of disagreement."[19] We held that "[a] simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under Art. 36.28."[20] We explained that "[t]o hold otherwise permits speculation in every case as to the possibility of disagreement."[21]

Three months later we decided *Robison*. There, the jury initially requested "[d]ocumentation that would give time of death for each victim" and "[e]vidence or transcript containing the findings of the Chief of Psychiatry at TCOM [Texas College of Osteopathic Medicine]."[22] The judge responded by telling the jurors that the law required them to disagree before testimony could be read back and that they should notify the court of the particular part or parts of any testimony which was in dispute.[23]

Twenty minutes later the jury sent another note stating, "We respectfully request all written documents that were submitted into evidence be brought to us."[24] The judge responded, "You have all the written documents that were submitted into evidence other than the three documents attached to this answer. If you are referring to oral testimony concerning a particular witness' testimony, you are instructed that you must be specific about the oral testimony you want reproduced for you and which is in dispute."[25] The jury foreman responded, "Request transcript of Hatcher's [the prosecutor's] cross-examination of Dr. Price, in which Hatcher read excerpts from, the report of the Chief of Psychiatry at TCOM."[26] At this point the judge sent the jury the transcription.[27]

We concluded that the judge did not violate Art. 36.28. We distinguished *Moore*, because in that case, "[t]he trial court made no affirmative effort to determine if there was a dispute about the requested testimony, let alone what the dispute may be."[28] In *Robison*, on the other hand, "there were three separate requests made by the jury in determining whether a dispute existed, each becoming increasingly narrow in scope" and the judge "clearly informed the jury that testimony would be read back only in the event of a dispute."[29] We concluded that "[t]he trial court was properly cautious in observing the competing concerns of article 36.28 of the Texas Code of Criminal Procedure."[30]

This case falls somewhere between *Moore* and *Robison*. Like *Robison*, in this case there were multiple requests for testimony, each becoming increasingly specific.

18. *Id.*

19. *Id.* at 673.

20. *Id.*

21. *Id.* at 674.

22. *Robison,* 888 S.W.2d at 480.

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.*

27. *Id.*

28. *Id.* at 481.

29. *Id.*

30. *Id.*

But unlike *Robison,* here the judge never told the jury that a disagreement was required. Instead, the judge merely inquired as to whether the jury was in disagreement.

The Court of Appeals, noting this distinction, concluded that this case was more similar to *Moore.* The Court found that the jury never indicated a disagreement in this case, and that the increasingly specific notes were irrelevant because the judge had not told the jury that a disagreement was required.[31] But in reaching this decision, the Court of Appeals failed to properly apply the standard of review.

■■■ An appellate court should not disturb a trial judge's decision under Art. 36.28 "unless a clear abuse of discretion and harm is shown."[32] The test for abuse of discretion "is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse."[33] Although a simple request for testimony is insufficient to reflect a dispute, a trial judge may, in its discretion, infer a dispute in a given case.[34] The judge's inference of dispute need only have some basis other than mere speculation.[35]

Here, the jury asked for the police officer's testimony. When told to be more specific, the jury asked for the testimony concerning the "eye movement test." The judge asked the jury if they were in disagreement, and the jury said that they had an individual, or maybe more, who didn't clearly hear all of the testimony.

The judge went to great lengths to examine the notes of the jury and determine whether a dispute existed. The judge did not rely solely on speculation; instead, he analyzed the notes and believed that they reflected a dispute. Like the court in *Robison,* "by considering the last note requesting the testimony in conjunction with prior notes from the jury and the corresponding instructions from the trial court, it was not unreasonable to infer a disagreement among the jury."[36] Like *Robison,* the judge here made an "affirmative effort to determine if there was a dispute about the requested testimony."[37] And as in *Robison,* the trial judge was "properly cautious in observing the competing concerns of article 36.28 of the Texas Code of Criminal Procedure."[38] The trial judge concluded that the jury disagreed over the substance of the police officer's testimony. This was a reasonable conclusion under the circumstances. We cannot say the judge abused his discretion in inferring a dispute among the jurors in this case.

Howell argues that, "[w]here some of the jury members do not hear or remember testimony, there can by definition be no 'dispute' about it." She seems to say

---

31. *Howell,* 149 S.W.3d at 691–92.

32. *Brown v. State,* 870 S.W.2d 53, 55 (Tex. Crim.App.1994)

33. *Randon v. State,* 107 S.W.3d 646, 648 (Tex. App.-Texarkana 2003, no pet.), *citing Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim.App.1990) (op. on reh'g).

34. *Moore,* 874 S.W.2d at 673, *citing Jones v. State,* 706 S.W.2d 664, 667 (Tex.Crim.App. 1986).

35. *Id.* at 674.

36. *Robison,* 888 S.W.2d at 481.

37. *Id.*

38. *Id.*

that a jury must use the word "disagree" or "disagreement" in its note to the judge in order to satisfy the statute. We reject this hypertechnical interpretation. The statute requires that the jury disagree; it does not require that the jury use any particular words to express that disagreement. The issue is not whether a person who did not hear certain testimony can ever be said to be in disagreement with a person who did hear it. As always, whether a disagreement exists will depend upon the particular facts of each case. The only issue we must decide today is whether in this case, this judge abused his discretion by inferring a disagreement based on these particular jury notes. In this case, the judge's decision that a disagreement was shown is not "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." [39] The Court of Appeals erred to conclude otherwise.

### Conclusion

We reverse the judgment of the Court of Appeals and remand this case to that court for consideration of Howell's remaining points of error.

MEYERS, J., did not participate.

### Appendix

Q: Let me pause. Did you observe smooth pursuit in her eyes when you did the first part that you just described?

A: No, ma'am, I did not.

Q: When you did the maximum deviation, did you observe the jerking in her eyeballs?

A: Yes, ma'am.

Q: You mentioned that some other drugs can cause that?

39. *Cantu*, 842 S.W.2d at 682.

A: (Nods affirmatively).

Q: Antihistamines taken or allergies cause that?

A: No, a central nervous depressant like spray paint, somebody that is doing PCP or stimulant, central nervous depressant that would cause it to stand out.

Q: Were there any indications that she was doing any of these illegal drugs?

A: No, ma'am.

Q: What was the next part of the test?

A: The third part is from the same position, instead of coming all the way out to here, what we will do is go a whole lot slower, and we will move it over until the point where you see the nystagmus start; so this is where you see the eyes smooth to a point. And it will start bouncing at that point. This pretty much tells you, you can estimate about where it starts. And that we get to right here, and it starts and it will stop right there, and we will do the other eye the same way.

Q: About how many degrees, how many degrees out does the jerking in her eyes start?

A: Somewhere between, between 30 to 35, somewhere, not all the way out, but before we get tot he maximum.

Q: I'm sorry, I didn't hear that.

A: Between 30 and 35. 45 is out here, and you are starting in the middle, 30 would put it about right here somewhere between here and here. It doesn't look like a whole lot but if you are looking at it this way, your eyes aren't moving comparative to the pen. The eyes aren't moving. The earlier nystagmus starts in your eyes, I have found—

[DEFENSE COUNSEL]: Objection to narrative.

THE COURT: Just respond to the question.

Q: What does it indicate to you when that jerking or nystagmus starts earlier on? And speak up.

A: That they have had more to drink than what most people will admit to having. Almost everybody that I have dealt with will say a couple or two beers. I have only had one or two of them say I have had a six-pack. And the earlier, the earlier the nystagmus starts in the eyes, I have found is an indication that they have had more than what they are actually saying.

Q: In terms of how you score this test, are there, is there a percentage score or a letter score that you give to a person? How do you score this test?

A: What we are looking for are the clues of intoxication, which is the lack of smooth pursuit, and it is one clue per eye.

Q: So that is two clues?

A: Two.

Q: And then you have maximum deviation which is all the way out, and the nystagmus at deviation is also two?

A: Two. So that is four.

Q: If you have nystagmus prior to maximum deviation between 30 and 35, that is two more clues, so you have a total of six clues. How many did you observe in the defendant when you did this test on the eye?

A: Six clues.

Q: Six clues?

A: Six clues total. She had the maximum amount of clues and you could get.

Q: And can someone who is a practiced drinker or a frequent drinker control this effect on their eyes if they concentrated hard?

A: No, there is no way to control it. It is an involuntary action. It is an involuntary muscle response. There is no way you can do it.

* * *

Q: All of these questions about the horizontal gaze nystagmus test, if she had looked anywhere else, like at cars moving or lights moving or birds flying through the sky, would she have been performing the tests properly?

A: No, ma'am.

Q: Did she keep her eyes on the stimulus as you moved back and forth?

A: Yes, ma'am.

Q: Did she perform at least that part of the test in order to maintain the integrity of the results?

A: Yes, ma'am.

Q: Did you do the tests properly in order to read her results properly?

A: Yes, ma'am.

Q: If somebody has very distinct and obvious nystagmus is it necessary to do each part of the test twice?

A: If it's very obvious when you first do it the very first time, if there is no question that nystagmus has started at maximum deviation, and some people will see it, and it is obvious that is what it's doing; I have done where I do it one time on this side, and I will go back and do it one time on this side, if it's that obvious.

Q: The manual says you start with the left eye, right?

A: Yes, ma'am.

Q: And you started with her right eye?

A: Yes, ma'am.

Q: In your experience does that affect the performance of the test?

A: No, ma'am.

Q: Have you altered your administration of these tests in any way that would change the reliability of the results?

A: No, ma'am.