**Opinion filed June 28, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00171-CR

_____

## STANDRIDGE SMITH, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17427B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Standridge Smith of felony murder through injury to a child and assessed punishment at twenty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). The victim was appellant's daughter, J.S. We modify and affirm.

Appellant argues in seven issues on appeal: (1) the trial court committed reversible error by denying appellant's request for additional experts; (2) the trial court committed reversible error by denying appellant's motion to suppress the written statement taken by law enforcement and admitting it into evidence; (3) the trial court committed reversible error by denying

appellant's motion to quash; (4) the trial court committed reversible error by admitting evidence of additional injuries received by the alleged victim prior to the date of the events the subject of the indictment; (5) the trial court committed reversible error in allowing the State to call undisclosed expert witnesses in rebuttal; (6) appellant was deprived of his right to effective assistance of counsel by trial counsels' failure to request jury questions on lesser included offenses; and (7) the trial court committed reversible error by allowing a fragmented portion of testimony to be read back to the jury during deliberation without indication or explanation of the portions removed.

In his first issue, appellant contends that the trial court committed reversible error when it denied appellant's request for additional experts. Prior to trial, appellant filed a motion requesting the appointment of Dr. Elliot B. Oppenheim as an expert. The trial court granted appellant's motion. Two months later, appellant filed a motion requesting appointment of additional experts. In support of the motion, appellant attached a letter from Dr. Oppenheim in which Dr. Oppenheim stated that he believed appellant would need three additional experts: (1) a forensic pathologist in order to challenge the State's primary expert, the medical examiner; (2) an obstetrician, neonatologist, or perinatologist to testify regarding the preexisting conditions that likely contributed to J.S.'s death; and (3) a pediatric radiologist to respond to anticipated allegations of abuse derived from J.S.'s fractured clavicle. In response, the court appointed Dr. Marc Shuman, the forensic pathologist recommended in Dr. Oppenheim's letter, and released Dr. Oppenheim. Subsequently, Dr. Shuman referred appellant to Dr. John G. Galaznik, and appellant filed a motion requesting the appointment of Dr. Galaznik to replace Dr. Shuman. At trial, Dr. Galaznik testified for appellant.

When an indigent defendant makes a threshold showing that expert assistance would likely be a significant factor at trial, he is entitled to the appointment of an expert. *Ake v. Oklahoma*, 470 U.S. 68, 82–83, 86 (1985); *Griffith v. State*, 983 S.W.2d 282, 286–87 (Tex. Crim. App. 1998). To determine if appellant was entitled to the requested additional experts, three factors are relevant: (1) the private interest that will be affected by the State's action; (2) the governmental interest that will be affected if the safeguard is to be provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Ake*, 470 U.S. at 77; *Rey v. State*, 897 S.W.2d 333, 337 (Tex. Crim. App. 1995). We review the trial court's ruling for an abuse of discretion. *Griffith*, 983 S.W.2d at 287. The purpose is to ensure

2

that the indigent defendant has access to a competent expert to assist in the evaluation of his defense. *Ake*, 470 U.S. at 77; *Griffith*, 983 S.W.2d at 286. The type of expert and the nature and complexity of the field of specialty must be considered in deciding if an expert will be helpful or a significant factor at trial. *Griffith*, 983 S.W.2d at 287. This does not mean that a defendant is entitled to an expert of his "personal liking" or that he has the right to choose which expert is appointed. *Id.* at 286.

In appellant's motion requesting appointment of three additional experts, appellant argues that the "additional expert witnesses are absolutely necessary to present and address the issues before this Court and to 'mount a meaningful defense which will withstand constitutional Due Process legal muster.'" Additionally, the motion provided that appointment was necessary to insure appellant "receives his rights to effective assistance of counsel, cross-examination and confrontation of witnesses, and compulsory process." Appellant argues that the effect of the trial court's refusal to appoint the two additional experts is reflected by his allegation that Dr. Galaznik's research and testimony, while extensive and thorough, was easily vulnerable to attack by the State by virtue of its generality and by virtue of his being a mere "paper expert."

As discussed above, appellant was not limited to one expert during the course of this case. The trial court approved the appointment of three experts: Dr. Oppenheim, Dr. Shuman, and Dr. Galaznik. At trial, Dr. Galaznik offered testimony refuting the State's expert's opinion on cause of death and cause of injury to J.S.'s clavicle. There is no evidence that Dr. Galaznik could not or did not adequately assist appellant. Under these circumstances, the trial court did not err when it denied appellant's request for the appointment of additional experts. Moreover, the record does not reflect that, after the trial court appointed Dr. Galaznik, appellant made any further requests for experts. We overrule Issue One.

In his second issue, appellant contends that the trial court committed reversible error when it denied appellant's motion to suppress the written statement that he gave to law enforcement. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their

testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Appellant contends that his statement was not voluntary for the following reasons: (1) he was operating on minimal sleep from a period of several days; (2) he was isolated and pressed relentlessly for three and one-half hours; and (3) he was distraught with grief from the recent loss of his daughter, J.S. Under such conditions, appellant claims, he could not have "knowingly, intelligently, and voluntarily" waived his rights under Article 38.22 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005). A defendant's statement may be used in evidence against him if he made it freely and voluntarily and without compulsion or persuasion. *Id.* art. 38.21. "The determination of whether a confession is voluntary is based on an examination of the totality of circumstances surrounding its acquisition." *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (quoting *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995)). A statement may be involuntary "if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999) (quoting *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)). The ultimate question for a court to answer when it determines voluntariness is "whether the suspect's will was overborne" by the conduct of the state actor. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). Some relevant circumstances include the length of the detention and interrogation, whether the defendant was permitted access to his family or attorney, and the presence or absence of physical brutality. *Gomes v. State*, 9 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Armstrong v. State*, 718 S.W.2d 686 (Tex. Crim. App. 1985), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). A defendant's characteristics and status, as well as the conduct of the police, are also important concerns. *Haynes v. Washington*, 373 U.S. 503, 517 (1963).

Before the trial, the trial court held a hearing on appellant's motion to suppress to determine the voluntariness and admissibility of appellant's confession. *See Jackson v. Denno*, 378 U.S. 368, 376–77, 392–93 (1964). The trial court found that appellant had freely and

4

voluntarily made his statement and that the statement would be admissible against appellant. At the hearing, Detective Terrill Lynn Perkins Jr. testified that, following J.S.'s death, he coordinated with the Air Force to arrange a meeting with appellant. After a meeting was arranged with appellant's first sergeant, Detective Perkins went to Dyess Air Force Base to speak with appellant. On base, he explained to appellant that he needed to speak with him about the case and that appellant was under no obligation to speak with him. Appellant agreed to go to the law enforcement center to speak with Detective Perkins. After telling appellant that he was free to get there however he chose, Detective Perkins asked if appellant would like to ride with him. Appellant agreed. Detective Perkins testified that, at that time, appellant was not under arrest, was not handcuffed, and rode in the front seat with him to the law enforcement center. When they arrived, they went to Detective Perkins's office in the Child Advocacy Center. Again, Detective Perkins told appellant that he was not under arrest and, although was not required to give *Miranda*[1] warnings to an individual not in custody, told appellant what his rights were under *Miranda*. Appellant told Detective Perkins that he understood his rights and that he would like to speak with Detective Perkins about the case. Detective Perkins told appellant that he was free to go to the restroom or to have a drink of water if he would like. Detective Perkins testified that the interview took place in his office and was recorded on video. The video is approximately three hours and thirty-four minutes long. At the end of the interview, appellant signed a written statement in which he stated that, on the date of the offense, he threw J.S. onto the bed, that J.S. bounced when she hit the bed, and that he had thrown J.S. onto the bed before. After he signed the written statement, appellant was not arrested. He called his first sergeant to come pick him up, and then he left. Approximately seven days later, he was arrested.

Appellant testified at the suppression hearing as well. He stated that he slept very little in the days between the offense and the interview; that he was "in grief" at the time of the interview; that, during the interview, he was sobbing uncontrollably; and that he felt that, based upon his mental state and lack of sleep, his statements were not his free and unconstrained choice. On cross-examination, appellant testified that he was not arrested, was never placed in handcuffs, and was never taken to jail.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

After the trial court denied appellant's motion to suppress, it entered an order in which it found appellant's statements were voluntarily given based on the following specific findings of fact:

1. The defendant was not under arrest; and, he was not in the custody of law enforcement.

2. Prior to beginning the interview, law enforcement read the defendant the *Miranda* warnings.

3. The defendant indicated he understood his rights under *Miranda*; and, the defendant knowingly waived his rights under *Miranda*.

4. Law enforcement did not threaten the defendant with physical harm.

5. Law enforcement did not promise the defendant anything.

6. Law enforcement did not coerce the defendant.

7. At the beginning of the interview law enforcement offered to give the defendant "a ride" back to the Air Force base, where he was on active duty.

8. Law enforcement made sure the defendant's physical needs were met.

The trial court did not abuse its discretion in admitting appellant's statement. The record does not reflect that appellant's mental state was such that it rendered his statement involuntary. *See Licon v. State*, 99 S.W.3d 918, 925 (Tex. App.—El Paso 2003, no pet.) ("mere emotionalism or confusion alone will not render a confession inadmissible"). Furthermore, we give deference to the trial court's rulings on questions of fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A question turns on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is always enough to add up to what is needed to decide the substantive issue. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). It is clear that the trial court believed Detective Perkins's testimony that showed that appellant's statement was given freely and voluntarily without compulsion or persuasion. We overrule appellant's second issue on appeal.

In his third issue, appellant contends that the trial court committed reversible error when it denied his motion to quash the indictment. Specifically, appellant complains about the second paragraph of the indictment, which provides in part as follows:

> [Appellant] did then and there commit and attempt to commit an act clearly dangerous to human life, to-wit: throwing [J.S.] onto a bed, that caused the death of the said [J.S.], and the said [appellant] was then and there in the course of knowingly, recklessly and with criminal negligence committing a felony, to-wit: Injury to a Child, and the death of the said [J.S.] was caused while the said [appellant] was in the course of and in furtherance of the commission and attempted commission of the said felony.

Appellant first argues that the language in the second paragraph of the indictment was misleading because it rearranged the language of the statutory offense. We review the denial of a motion to quash de novo. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Jones v. State*, 333 S.W.3d 615, 623 (Tex. App.—Dallas 2009, pet. ref'd). The right to notice is set forth in both the United States and Texas constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Moff*, 154 S.W.3d at 601; *State v. Rodgers*, 214 S.W.3d 644, 647 (Tex. App.—Eastland 2006, pet. ref'd). A charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *Moff*, 154 S.W.3d at 601; *Rodgers*, 214 S.W.3d at 647. Appellant does not claim on appeal that the instrument was not specific enough to inform him of the nature of the accusation against him. Appellant's first argument under Issue Three is without merit insofar as it relates to the order of the words of paragraph two because the paragraph pleaded every element that must be proven at trial in such a way that it gave appellant sufficient notice of the charged offense to allow him to prepare a defense.

Appellant's second argument is that the second paragraph of the indictment failed to meet the requirements set forth in Article 21.15 of the Texas Code of Criminal Procedure. Article 21.15 provides as follows:

> Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

TEX. CODE CRIM. PROC. ANN. art. 21.15 (West 2009).

We first note that, because this is an indictment paragraph for felony murder, it is sufficient if the indictment alleges the underlying felony committed and the culpable mental state attending the underlying felony committed. *Johnson v. State*, 4 S.W.3d 254, 255 (Tex. Crim. App. 1999); *Flores v. State*, 102 S.W.3d 328, 331 (Tex. App.—Eastland 2003, pet. ref'd). Here, the underlying felony offense is injury to a child, which includes recklessness and criminal negligence as culpable mental states. TEX. PENAL CODE ANN. § 22.04 (West Supp. 2011). Appellant argues that the phrase "throwing [J.S.] onto a bed" does not sufficiently identify the act or acts relied upon to constitute recklessness as required by Article 21.15. Appellant correctly acknowledges that an alleged inherently reckless act would satisfy Article 21.15. *See Smith v. State*, 309 S.W.3d 10, 16 (Tex. Crim. App. 2010). However, appellant contends that there is nothing clearly dangerous to human life, and thus inherently reckless, about throwing J.S. onto a bed. We disagree. The act of throwing a two and one-half month old infant onto a bed is inherently reckless. As such, it sufficiently apprised appellant of the act constituting recklessness. Appellant's third issue is overruled.

In his fourth issue, appellant contends that the trial court committed reversible error by admitting evidence of additional injuries inflicted upon the victim prior to the date of the events that were the subject of the indictment.

In its opening statement, the State told the jury that, in the trial, the jury would hear that the date of the offense was not the first time appellant had thrown J.S. onto the bed. He had done it approximately three weeks earlier. The State began to talk about other "unusual things that we found whenever [J.S.] was taken to Cook Medical." Appellant objected, arguing that it was inappropriate for the State to address Rule 404(b) material prior to any decision by the court as to its admissibility. TEX. R. EVID. 404(b). In response to the objection, the State replied that it had given appellant notice of its intent to use the prior acts, that there was no motion in limine filed by appellant, that it was proper in a murder trial under the Code of Criminal Procedure for the State to go into the entire relationship between the accused and the decedent, and that it "believed that [it could] show this evidence." The court overruled appellant's objection. Continuing its opening statement, the State told the jury it would hear that, following an examination of J.S. after the date of the offense, it was discovered that she was healing from a broken clavicle. The State stated that the jury would hear Dr. Lloyd White testify as to the approximate time the broken clavicle occurred and as to the most likely cause being abuse.

Stacey Smith was appellant's wife. During the trial, prior to Smith's testimony before the jury, the trial court conducted a hearing outside the presence of the jury to determine the admissibility of extraneous offense evidence about which she was expected to testify. Smith testified that, prior to the date of the offense, she observed an injury to J.S. after J.S. had been left home alone with appellant. Following arguments from both sides, the trial court did not allow Smith's testimony concerning her observation of the prior injury.

Later in the trial during Detective Perkins's testimony, the State offered, and the trial court admitted, appellant's written statement, which included the following: "The first time I threw [J.S.] on the bed was about three weeks ago. [J.S.] hit her left eye on the couch while I was doing a diaper change." Appellant did not object. During cross-examination of Detective Perkins, appellant offered the video of the interview, including appellant's statement, into evidence. The trial court admitted it, and appellant published it to the jury. Following the video, during appellant's cross-examination of Detective Perkins, appellant asked him, "[W]hich injuries did you learn of before [J.S.] was declared deceased?" In response, Detective Perkins answered, "I believe it was the subdural hematomas, the retinal hemorrhaging, and the broken collar bone." Later, appellant asked Detective Perkins whether the "fractured clavicle could have been the result of a birth injury" and questioned Detective Perkins about his opinion that the injuries, including the fractured collar bone, were a result of abuse.

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006); *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). A defendant's prior crimes or bad acts are generally inadmissible to prove that he has a bad character or a propensity to commit the offense charged. *Robinson v. State*, 844 S.W.2d 925, 928 (Tex. App.—Houston [1st Dist.] 1992, no pet.). Such evidence, however, may be admissible for other purposes, such as proof of motive, intent, plan, knowledge, or lack of mistake or accident. Rule 404(b). The "other purposes" listed in Rule 404(b) are not exclusive or exhaustive but are merely representative. *Robinson*, 844 S.W.2d at 929.

To preserve error for appellate review, the complaining party must make a timely, specific objection in the trial court and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). A party may not complain on appeal of the admission of improper evidence offered by the other side when that party introduced the same evidence or evidence of a

similar character. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We are aware of the rule that an objecting party does not waive his objection in those cases where a trial court has erroneously admitted evidence and the opposing party introduces more evidence to meet, destroy, or explain it by introducing rebutting evidence. *Id.* at 719. That is not the case here, however. Appellant did not object to the admission of his written statement in which he admitted to throwing J.S. onto the bed prior to the date of the offense. Furthermore, appellant offered into evidence the entire video of his statement and raised the issue of how the broken clavicle occurred in his questioning of Detective Perkins. Therefore, appellant has waived any error in the admission of evidence of the additional injury.

Appellant also seems to contend that, because the State was allowed to discuss the broken clavicle in its opening statement, appellant was forced to address the broken clavicle in his case. It is proper for the State to state what it expects to prove in its opening statement. TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (West 2007). Evidence was ultimately submitted to support the State's opening comments. Any error from the opening statement was removed when the evidence was presented to the jury. *See Hullaby v. State*, 911 S.W.2d 921, 927 (Tex. App.—Fort Worth 1995, pet. ref'd). Appellant's fourth issue is overruled.

In his fifth issue, appellant contends that the trial court committed reversible error when it allowed the State to call two undisclosed expert witnesses in rebuttal.

During the State's case-in-chief, among other exhibits the State offered, and the trial court admitted into evidence, was a picture of J.S.'s collar bone after it had been removed. Appellant did not object. Dr. White testified that, although broken clavicles are a very common birth injury, the fracture that J.S. suffered was not the result of a birth injury. He stated that the injury could not be more than a few weeks old.

During appellant's case-in-chief, appellant called Dr. Galaznik to testify. Among other things, Dr. Galaznik testified about the clavicle bone fracture. He stated that a fractured clavicle is the most common fracture of infants at birth, and he attributed J.S.'s fracture to be the result of a vaginal birth. Dr. Galaznik also disputed Dr. White's testimony that the fracture occurred within a few weeks of J.S.'s death, and he testified that, based on his research, one could not make a valid determination of the date of the fracture.

In order to rebut Dr. Galaznik's testimony that the fracture occurred at birth and was not the result of appellant's throwing J.S., the State called two witnesses: Dr. Barry Burton Putegnat and Dr. Brent Steadman. Following an objection from appellant, Dr. Putegnat and Dr. Steadman

10

testified. Dr. Putegnat testified that these types of fractures at J.S.'s age generally are caused only by vaginal birth or abuse and that J.S.'s fracture did not occur at birth. Dr. Steadman testified that he examined J.S. within twenty-four hours of her birth, checked for a broken clavicle, and did not note one.

As stated above, we review a trial court's decision to admit evidence under an abuse of discretion standard. *Wall*, 184 S.W.3d at 743; *Angleton*, 971 S.W.2d at 67. Appellant's argument seems to be that the trial court erred in two ways: (1) appellant was given no notice of these two witnesses and (2) their testimony further elaborated on the alleged extraneous fractured-clavicle injury.

Assuming, without deciding, that the fractured clavicle was a new extraneous injury at this point in the trial, appellant was not entitled to notice of the extraneous injury because the evidence was introduced during the State's rebuttal testimony, not in the State's case-in-chief. *Jaubert v. State*, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002). It is permissible for a trial court to admit evidence of extraneous offenses in order to rebut a defensive theory. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Appellant's fifth issue is overruled.

In his sixth issue, appellant contends that he was deprived of his right to effective assistance of counsel by trial counsels' failure to request jury questions on lesser included offenses. To prevail on a claim of ineffective assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999).

The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648

(Tex. App.—Eastland 2005, pet. ref'd). When the record is silent on the motivations underlying counsel's tactical decisions, an appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Thompson*, 9 S.W.3d at 813. In order to defeat *Strickland*'s presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771.

Appellant argues that his trial attorneys were ineffective because they failed to request a jury instruction on the lesser included offenses of manslaughter and criminally negligent homicide. Assuming without deciding that appellant was entitled to an instruction on a lesser included offense, we conclude that the record does not support appellant's contention that trial counsels' performance fell below an objective standard of reasonableness. "Ineffective assistance of counsel claims are not built on retrospective speculation"; they must be firmly founded in the record, which "must itself affirmatively demonstrate the alleged ineffectiveness." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). In most cases, the undeveloped record on direct appeal will be insufficient to satisfy both prongs of *Strickland* because the reasonableness of counsel's choices often involve facts not appearing in the appellate record. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). This case is no different. The record in this case is undeveloped and does not shed any light on why trial counsel did not request a jury instruction on the lesser offenses of manslaughter and criminally negligent homicide as lesser included offenses of murder. *See Cardenas v. State*, 30 S.W.3d 384, 392–93 (Tex. Crim. App. 2000). However, the failure to request an instruction on a lesser included offense may be a reasonable trial strategy. *See, e.g., Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (holding that counsel was not ineffective for adopting an all-or-nothing trial strategy in which counsel failed to request jury instructions on the lesser included offenses of manslaughter and negligent homicide in a murder case); *Lynn v. State*, 860 S.W.2d 599, 602–03 (Tex. App.— Corpus Christi 1993, pet. ref'd). Due to the undeveloped record in this case, we cannot hold that counsel were ineffective for failing to request a jury instruction on a lesser included offense. Appellant's sixth issue is overruled.

In his final issue, appellant contends that the trial court committed reversible error when it allowed only a fragmented portion of testimony to be read back to the jury during its deliberations.

When the jury asks that certain testimony be reread, the trial court must first determine if the request is proper under Article 36.28 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2006); *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005) (citing *Moore v. State*, 874 S.W.2d 671, 673 (Tex. Crim. App. 1994)). A request for testimony is proper under Article 36.28 if it reflects that the jurors disagree about a specified part of the testimony. *Howell*, 175 S.W.3d at 790. If the request is proper, the trial court must interpret the communication, decide which sections of the testimony will best answer the inquiry, and then limit the rereading accordingly. *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994). The trial court's decision will not be disturbed unless a clear abuse of discretion and harm are shown. *Id.*; *see also Howell*, 175 S.W.3d at 790.

In a note from the jury, the jury stated: "May we request to hear the testimony of Dr. G[a]laznik in regards to studies relating to the impact of infant falls. We certify we have a disagreement of this testimony." Outside the presence of the jury, the trial court provided both parties with copies of transcripts of what it had determined was the relevant testimony in response to the jury's question. Appellant initially had no objection. The State did have several objections to portions of the testimony that it argued were unresponsive to the jury's question. Specifically, the State argued that portions of the selected testimony were not in response to the jury's question regarding the results of a study but, instead, pertained to Dr. Galaznik's own opinion and were speculative. For example, the first objection by the State challenged a portion of the testimony that occurred after testimony that related to a study that involved the impact from falls at various heights on anthropomorphic test devices. Dr. Galaznik had testified:

> So that if one is going to accept that a slam onto a mattress can cause this, then one would have to accept that a one-foot fall onto a carpeted surface could also cause this, and I don't think the child abuse community is ready to recognize that or accept that as a valid contention.

Appellant argued that Dr. Galaznik was arguing an alternative hypothesis. The trial court sustained the State's objection, and that portion was not read to the jury. Subsequent similar objections by the State and arguments by the parties followed.

13

After a review of the record, we hold that the trial court did not abuse its discretion when it determined which portions of the testimony best answered the jury's question and when it limited the reading accordingly. The record reflects that the trial court heard extensive debate regarding the removed portions about which appellant complains. Article 36.28 entitles the jury to hear only the "part of such witness testimony or the particular point in dispute, and no other." Article 36.28. The jury requested to hear Dr. Galaznik's testimony only insofar as it addressed "studies." The trial court's decision to exclude other portions of the testimony is not so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *See Howell*, 175 S.W.3d at 790. Appellant's seventh issue is overruled.

We note that the judgment in the clerk's record provides the statute for offense as "19.02(b)(1) Penal Code," but in accordance with the jury's verdict, it should provide "19.02(b)(3) Penal Code." Therefore, we modify the judgment to delete "19.02(b)(1) Penal Code" and to instead read "19.02(b)(3) Penal Code."

The judgment of the trial court is modified and, as modified, affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


June 28, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

14