# NO. 12-17-00347-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FRANKIE EVERETT TILLIS,*<br>*APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HOUSTON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Frankie Everett Tillis was charged by indictment with the state jail felony offense of possession of less than one gram of cocaine with intent to deliver (Count One), and the second degree felony offense of tampering with evidence enhanced by one prior felony conviction (Count Two). The jury found Appellant "guilty" of the lesser included offense of possession of less than one gram of cocaine and "guilty" of tampering with evidence. In two issues, Appellant maintains that the trial court erred in the admission of testimony regarding a narcotics field test without the required foundation for scientific testimony and in admitting testimony about a narcotics field test from an unqualified lay witness. We affirm.

### BACKGROUND

On October 2, 2015, a team from the Houston County Sheriff's Office executed a search warrant at a house owned by Appellant at 421 Carver Street, Grapeland, Texas. Investigators Jerry Kaelin and Michael Molnes found Appellant in the bathroom sitting on a flushing toilet with his hands behind his back and his pants undone.

The officers found an almost empty pill bottle and some folded currency on the floor next to the toilet. Folded currency was also found in Appellant's pocket. In the kitchen, Kaelin found other items involving narcotics, such as a digital scale, and a glass jar containing baking powder,

which is used in making crack cocaine.  In another room, Kaelin found a radio scanner of a type often used to monitor police activity.  Kaelin field tested the residue in the pill bottle found on the bathroom floor and the surface of the digital scale.  He sent the pill bottle, but not the scale, to the DPS lab for confirmation of the field test.  A DPS chemist testified that the substance in the pill bottle was cocaine.

Appellant filed a motion in limine to require the State, before eliciting testimony about field testing, to demonstrate that the evidence met the standards required by *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992).  At trial, but outside the jury's presence, Kaelin testified that he was trained in the conduct of field tests for narcotics and had extensive experience in their use.  He explained how he conducted the field tests on the pill bottle found in the bathroom and the scales found in the kitchen.  Kaelin told the court that he rubbed a swab across the surface of the digital scale and performed a field test on the swab.  The color change in the test kit indicated the presence of methamphetamine, but not cocaine.

The trial court ruled that the officer was not an expert and therefore could not testify that the test indicated the presence of any particular drug.  However, the trial court ruled that he could testify about the field test procedure followed and the result that the test kit changed colors.  The trial court overruled Appellant's renewed objections.

Before the jury, Kaelin described the procedure of wiping the digital scale with a sterile swab and field testing the swab.  He explained the field test's results, as follows:

> And so if the tip of that Q-tip turns the color that's on the outside of the packet, then you know you have a positive test, that that scale was used in the commission of a drug crime.

He testified that he felt it was unnecessary to send the swab of the scale to the DPS lab for "confirmation of that test" because "we had a strong enough case."

After finding Appellant "guilty" of the lesser included offense of possession of less than one gram of cocaine and "guilty" of tampering with evidence, the jury assessed Appellant's punishment at eighteen months in a state jail facility on Count One and imprisonment for thirteen and one half years on Count Two.  This proceeding followed.

2

In two issues, Appellant challenges the admission of Kaelin's testimony as unqualified and lacking the requisite foundation.

## Standard of Review

The trial court's determination of the admissibility of expert testimony is reviewed for abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995). A trial court abuses its discretion when its determination is so clearly wrong as to lie outside outside the zone of reasonable disagreement. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

## Applicable Law

Rule 702 of the Texas Rules of Evidence sets out three conditions for the admission of expert testimony: (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) the testimony must assist the trier of fact to understand the evidence or resolve a fact in issue. TEX. R. EVID. 702; *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). Under *Kelly*, a trial judge must, upon request, conduct a "gatekeeping hearing outside the presence of the jury to determine whether scientific evidence is sufficiently reliable and relevant to help the jury in reaching an accurate result." *Coble v. State*, 330 S.W.3d 253, 273 (Tex. Crim. App. 2010). The proponent of scientific evidence must prove, by clear and convincing evidence, that the evidence is both relevant and reliable. *Kelly*, 824 S.W.2d at 573. To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id*. A nonexclusive list of factors that can influence a trial court's determination of reliability include (1) the extent to which the theory and procedure are accepted as valid by the relevant scientific community, (2) the technique's potential rate of error, (3) the availability of experts to test and assess the method or technique, (4) the clarity and precision with which the underlying scientific premise and approach can be explained to the court, and (5) the knowledge and experience of the person(s) who applied the methodology on the occasion in question. *Id*.

Relevant evidence is that which has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. TEX. R. EVID. 401(a). In determining whether evidence is relevant, courts should examine the purpose for which

the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id*.

**Discussion**

During a hearing outside the presence of the jury, Kaelin testified that he rubbed a swab across the surface of the digital scale and performed a field test on the swab. The color change in the test kit indicated the presence of methamphetamine, not cocaine.

Appellant objected that Kaelin was not qualified as an expert to testify about the field test and that Kaelin's testimony regarding the test did not meet the criteria for scientific evidence under *Kelly v. State*. The trial court held that Kaelin was not an expert and therefore could not testify about the presence of any particular drug, but that he could testify about the field test procedure and the physical results — that the test kit changed colors. The trial court overruled Appellant's renewed objection.

Before the jury, Kaelin described the procedure of wiping the digital scale with a cotton swab. He then explained, "And so if the tip of that Q-tip turns the color that's on the outside of the packet, then you know you have a positive test, that that scale was used in the commission of a drug crime." He testified that he felt it was unnecessary to send the swab to the lab for "confirmation of that test" because "we had a strong enough case."

On appeal, Appellant maintains the trial court "erred in admitting testimony about the procedure and physical results of the presumptive narcotics field test of the digital scale from a non-expert officer who was unqualified to establish the accuracy and reliability of the test." He points out that the State made no effort to demonstrate Kaelin's qualifications to testify about the scientific basis and reliability of the test.

Kaelin did not tell the jury the specific drug revealed by the test. But as Appellant argues, Kaelin's testimony regarding the field test results made it unquestionably clear to the jury that the test was positive for narcotics. Thus, we conclude that the trial court abused its discretion in admitting testimony of the "physical results" absent a threshold showing of the test's reliability by clear and convincing evidence as required by *Kelly*. *See Kelly*, 824 S.W.2d at 573.

**Harmless Error**

A violation of an evidentiary rule that results in the erroneous admission of evidence is not constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). When

4

a nonconstitutional error is made during trial, it will be disregarded as harmless if the error did not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is implicated when the error had a substantial and injurious effect or influence in the jury's determination of its verdict. *King*, 953 S.W.2d at 271.

In conducting a proper harm analysis, "the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Overwhelming evidence of guilt is a factor to be considered. *Id*. at 358.

Appellant argues that "the presence of a controlled substance on the digital scale was the only conclusive evidence of illicit drug activity." He also maintains that all other seized items suggesting Appellant's house was used for the sale of illegal drugs could be explained as also having a legitimate use. Kaelin was not allowed to tell the jury the substance on the scales identified by the field test. But his testimony effectively informed the jury that a controlled substance was present. According to Kaelin, the field test showed that the "scale was used in the commission of a drug crime." In Appellant's view, the jurors could have reasonably inferred the substance was cocaine, evidence falsely linking Appellant to the substance in the pill bottle.

According to Appellant, the digital scale evidence was critically important in linking him to the cocaine in the pill bottle. Therefore, he maintains that it likely influenced the jury's verdict. We disagree. The pill bottle was found in Appellant's house on the bathroom floor beside Appellant. Folded currency on the bathroom floor beside the pill bottle matched the folded currency found in Appellant's pocket. The circumstances strongly suggested that Appellant recently and hurriedly retrieved the pill bottle from his pocket with intent to flush it down the toilet. The State had no need for the evidence of a controlled substance on the digital scale to link Appellant to the pill bottle.

The State sought to prove that Appellant possessed the cocaine with the intent to deliver. Appellant's ownership of the digital scales and Kaelin's testimony that the scales had been used in a drug transaction served to show Appellant was a drug dealer. In eliciting Kaelin's testimony

5

about the scales, the State hoped to prove Appellant intended to deliver the cocaine he possessed. However, the jury was unpersuaded and found Appellant guilty of possession only.

Under these circumstances, we have more than a fair assurance that the error did not have a substantial or injurious influence on the jury. *See* ***King***, 953 S.W.2d at 271. We conclude the error was harmless. Appellant's first and second issues are overruled.

### DISPOSITION

The judgment is ***affirmed***.

**BILL BASS**
Justice

Opinion delivered September 19, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 19, 2018**

**NO. 12-17-00347-CR**

**FRANKIE EVERETT TILLIS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Houston County, Texas (Tr.Ct.No. 16CR-090)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*